GEORGE E. WILLIAMS & wife *vs.* INHABITANTS OF LEYDEN.

Franklin. Sept. 22, 1875. — Jan. 4, 1876. AMES & DEVENS, JJ., absent.

In an action against a town to recover for injuries occasioned by a defective highway, there was evidence tending to show that, at the time of the accident, the plaintiff was driving in a carryall; that suddenly the horse stopped, jumped aside, cramped the nigh wheel and began to back; that the plaintiff jumped out and was injured, the horse going over an embankment; that the horse driven by him was one of a span of team horses, and had been accustomed to draw on the nigh side in double harness, and that he had never been driven in the same carryall, but had been driven in single harness. The defendant asked the judge to instruct the jury that if the horse was most usually driven in double harness and on the nigh side, and, from the habit of taking the nigh rut, turned to the left and cramped the wheel and began to back, and the plaintiff jumped out instantly upon the cramping of the wheel, the plaintiff cannot recover for any injury sustained from the jumping out. The judge declined to give this instruction except with the qualification, "unless the act was done under a reasonable apprehension that the carriage would go over the bank." *Held,* that the defendant had no ground of exception.

TORT to recover for personal injuries alleged to have been caused by a defect in a highway in the defendant town. Trial in the Superior Court, before *Allen,* J., who allowed a bill of exceptions in substance as follows :

The plaintiffs' evidence tended to show that they were driving in the evening, in a one horse carryall, on a highway which it

was admitted the defendant town was bound to keep in repair; that they were going in a southerly direction, up a hill, on a smooth road about fourteen feet wide; that on the easterly side of the road there was a bank wall about three feet and a half high, without a railing; that suddenly the horse stopped, refused to draw, jumped aside, cramped the nigh wheel and began to back; that both the plaintiffs jumped from the carryall, and George E. took the horse by the head, and instantly the horse backed the carryall over the embankment, taking George E. along with him; and that both the plaintiffs sustained injury from what immediately followed the jumping out.

It was a question on which there was conflicting evidence as to the character and fitness of the horse for travelling on the high-way at the time of the accident; also as to the care and skill of the driver; and the usual instructions, not objected to, were given on both points.

There was also evidence tending to show that the horse was one of a span of team horses, and had been accustomed to draw on the nigh side in double harness, and that he had never before been driven in the same carryall, though he had been driven in single harness; and in the closing argument the plaintiffs' coun-sel suggested, as a theory of the accident, that the action and conduct of the horse might be explained by his habit of working in double harness on the nigh side, which might have led him to travel out of the centre of the road in the nigh rut, and, in so starting to the left, cramped the wheel and in some way made the backward movement which caused the plaintiffs to jump from the carryall and the backing off the embankment.

In relation to this part of the case the defendant asked the judge to instruct the jury as follows: " If the horse was most usually driven in double harness and on the nigh side, and, from the habit of taking the nigh rut, turned to the left and cramped the wheel, and began to back, and the plaintiffs jumped out in-stantly upon the cramping of the wheel, the plaintiffs cannot re-cover for any injury sustained from the jumping out." The judge declined so to instruct the jury, except with this qualification, " unless the act was done under a reasonable apprehension that the carriage would go over the bank."

To this ruling, instruction and refusal to instruct, the defendant alleged exceptions.

*C. Delano & C. G. Delano*, for the defendant.

*C. C. Conant*, for the plaintiffs.

MORTON, J.    The only question presented by this bill of exceptions is whether the presiding judge properly refused to give the instruction requested by the defendant.

. There was evidence tending to show that, at the time of the accident, the plaintiffs were driving in a carryall ; that the horse driven by them " was one of a span of team horses, and had been accustomed to draw on the nigh side in double harness, and that he had never before been driven in the same carryall, though he had been driven in single harness ; " and the defendant asked the court to instruct the jury that " if the horse was most usually driven in double harness and on the nigh side, and, from the habit of taking the nigh rut, turned to the left and cramped the wheel and began to back, and the plaintiffs jumped out instantly upon the cramping of the wheel, the plaintiffs cannot recover for any injury sustained from the jumping out." The court declined to give the instruction except with this qualification, " unless the act was done under a reasonable apprehension that the carriage would go over the bank." The instruction requested is capable of a double meaning. It may be construed as asking the court to direct a verdict for the defendant upon the ground that the injury to the plaintiffs was caused by their jumping out, and not by the defect of the road, in which aspect the qualification added by the court was a correct statement of the law. *Sears* v. *Dennis*, 105 Mass. 310. Or it may be construed as asking the court to direct a verdict upon the ground that the injury was caused by a vicious habit of the horse ; and the town now contends that upon this ground it was entitled to the instruction without the qualification. But it was for the jury, and not for the court, to determine whether the horse had any vicious habit or trick which contributed to the injury. It appears by the bill of exceptions that the jury were properly instructed as to what the plaintiffs must prove as to the character and fitness of the horse for travelling on the highway at the time of the accident. Upon this question, the facts, so far as they were proved, that the horse was most usually driven in double harness, on the

nigh side, and had the habit of taking the nigh rut, were properly submitted to them; but the court could not rule, as matter of law, that these facts showed a vicious habit of the horse which rendered him unfit to be driven in single harness. We are therefore of opinion that the instruction requested was properly refused.                                        *Exceptions overruled.*