FANNIE M. FLAGG *vs.* INHABITANTS OF HUDSON.

Middlesex.    March 3. — July 3, 1886.    W. ALLEN & HOLMES, JJ., absent.

In an action against a town for an injury occasioned by an alleged defect in a highway, in the night-time, the plaintiff, a woman, testified that she was in a vehicle with her husband, and he was driving slowly. The husband testified that the night was dark and foggy; that he had a rein in each hand, was holding the reins tightly, and was driving down a hill as slowly as the horse could trot. There was other evidence indicating a greater rate of speed. *Held,* that the question whether the plaintiff and her husband were in the exercise of due care was properly submitted to the jury.

If a person, driving along a narrow highway in a town, on a dark and foggy night, and using due care, turns his horse to the left, in order to avoid going down an

embankment on the right of the road, which is not guarded by a railing, and comes into collision with a carriage approaching from the opposite direction, and which is on its proper side of the middle of the way, and is injured, the defect is the sole cause of the injury, and he may maintain an action therefor against the town.

TORT, for personal injuries occasioned to the plaintiff by reason of an alleged defect in a highway in the town of Hudson. Trial in the Superior Court, before *Brigham*, C. J., who allowed a bill of exceptions, in substance as follows:

The injuries were received on April 27, 1883, at about half-past eight o'clock in the evening. Within thirty days thereafter a notice, as required by the statute, was given to the chairman of the selectmen of the defendant.

The plaintiff and her husband lived about three fourths of a mile from the place of the injury, on a road running east and west, and leading directly from their house to the village of Hudson; the injury was received at a place from eighty to one hundred feet from this road, on another road leading southerly, and nearly at right angles with the first-named road, towards Marlborough. The plaintiff's husband was well acquainted with the road on which the accident occurred, having, for a period of eighteen months prior to one year before the injuries complained of, driven twice daily over that road, morning and evening, in going to and from his work in Marlborough, and within the year had driven six or seven times over that road.

The travel from the first-mentioned road, according to the direction from which it came, entered upon the road in question by separate travelled paths, which united at a point fifty feet more or less southerly of an elm tree, and from this point there was but one travelled path by and beyond the place of the injury over a way in which there was a stone culvert covering a small brook. Each wheel-track and the track made by single horses were about one foot six inches wide, and the ground between them was not worn so much as that in the tracks. The surface of the constructed roadway was level, and from eleven and a half to twelve feet wide between the shoulders of the roadway on each side at the place where the accident occurred, and for some little distance both ways.

On the westerly side, the way sloped off gradually to a wall eight or ten feet distant, and was grassed over to the wall, on

which grass a carriage could turn out; on the easterly side the easterly wheel-track extended along by the side, and within about a foot of the easterly line, of the easterly shoulder of the way, and on that side from the shoulder the slope down was at an angle of about forty-five degrees, about as steep as gravel would stand, and the ground at the bottom of the slope was from one foot and six inches to two feet perpendicularly below the surface of the way. There was then no fence or railing on the easterly side of the way, but bushes from six to ten feet high stood by the side of, and somewhat projected over, the easterly edge of the way, except that the plaintiff offered evidence that the side of the way on each side of the culvert, and nearly to the small elm tree standing on the easterly side, was free from bushes.

The plaintiff, with her husband, left their house about seven o'clock on that evening in a light, open buggy, drawn by a horse driven by the husband, and drove over that road to the house of a neighbor about one mile southerly of and beyond the place of the injury, and remained there until after eight o'clock, and on their way home arrived near the place of the accident about half-past eight o'clock. The horse was reasonably safe and gentle, and had been driven by the plaintiff. The road was descending nearly to the culvert in the direction in which the plaintiff was travelling.

The plaintiff called as a witness her husband, who testified as follows: " As I came down the hill, I was driving as slow as the horse could trot. It was dark and foggy. I had a rein in each hand and was holding the reins tightly, and as I came round the turn my wife spoke to me, and I saw a team fifteen or twenty feet from me approaching. I pulled right up, and said, ' Whoa!' and my horse turned out; at the same time, I felt my buggy tip a little towards the east, and perhaps I pulled my horse back involuntarily. As soon as I thought we were going over, I jumped to the right into the meadow. My wife soon came, and her head struck against my shoulder and knocked me down. My buggy struck against the team, which proved to be a hack drawn by two horses."

On cross-examination, he testified that his forward wheel went between the hind wheel and body of the hack, striking

the door and step, and catching on the spring; that he had driven the same horse, and it was safe and gentle.

The plaintiff testified as follows: "I and my husband were riding toward home. My husband was sitting on the right-hand side of the buggy, and was driving slowly. It was quite dark, and we were talking. I heard a team coming, and said to my husband, 'Turn out.' He turned out, the buggy tipped to the right, and as it tipped I threw out my hand to catch hold of his coat to save falling, and the hack struck us. I remember my face striking against something on the ground. I knew no more until I found myself in Mr. Stone's house."

The plaintiff also called George Flood, who testified as follows: "I owned and was driving my hack, drawn by two horses, going from Maynard towards Marlborough, and had five men as passengers inside the hack. I was sitting on the front outside seat, driving. I had passed Stone's house, was paying attention to my horses, and was going not over three or four miles an hour. My horses were just trotting, not going over four miles an hour. I was looking ahead. It was very dark, and was between eight and one quarter o'clock and eight and three quarters. After I had turned the corner and got just out of and beyond the circle going south, I felt I was a little out of the road to the right, my horses going to the right without my guiding them. I saw a flash, thought I was out of the road a little, saw a buggy with a white horse, felt a crash as if striking my hack. I afterwards learned that the white flash was the white horse. The man hollaed, 'You have killed my wife.' I got off my hack, found her in the swampy place by the side of the road, and her head within three feet of the road. She was unconscious, and I helped carry her to Stone's house. After that, I returned to the place of the injury."

On cross-examination he testified as follows: "I can't tell how fast the white horse was going. When the white horse came in sight of me, it was side of my box on which I was driving. I could not see it was a horse; it was something white."

It appeared in evidence, from these and other witnesses, that the horse and buggy did not go down the side of the way, tip over, or strike against anything on that side after the first tipping; that when the plaintiff's husband jumped, the plaintiff

followed him, striking her head on his shoulder, and thereupon both fell upon some poles; and that the injuries to the plaintiff came either from her fall upon her husband when the buggy tipped, or from the collision of the buggy with the hack. At the time of the collision, the left or nigh forward wheel of the hack had passed, going to the right of the middle of the travelled path westerly of the path or track made by the horses, and the left or nigh hind wheel of the hack had reached a point between the easterly wheel-track and the horse track.

From end to end the hubs of the hack wheels measured six feet and one inch, and the wheels made tracks five feet and three inches apart, measured from the outside of each. From end to end the hubs of the buggy wheels measured five feet four and one half inches, and the wheels of the buggy made tracks four feet eight and one half inches apart, measured from the outside of each. The buggy struck the nigh step of the hack, which was supported by an iron arm about one inch in diameter, and the forward buggy wheel locked into the hind wheel of the hack. Immediately after the collision, it was found that the arm with the step was bent up under the body of the hack, the door off its hinges, and a mark of the hub-rim under the door of the hack; and that the hind end of the hack was lying to the west, eighteen to twenty-four inches from the track, the ground torn up for that distance, both elliptic and both C springs broken, and both hind wheels and axle detached from the body of the hack, whereby the hind end of the hack, with the passengers therein, fell on the ground, and the hind wheels and axle ran some ten feet over against the wall by the west side of the road. The buggy was but slightly injured, the harness of the horse attached thereto was not broken, and the horse, uninjured, stopped just round behind the hack, with his head facing the west.

The plaintiff contended that the defect in the road was the absence of a railing; and that the want of the railing was the sole cause of the injuries. The defendant contended that the alleged defect was not the cause of the injuries; that, had a railing existed at that place, the buggy would have struck against the hack if it avoided the railing; and that the plaintiff was not in the exercise of due care by herself and her husband.

Upon the conclusion of all the evidence, the defendant requested the judge to rule that the evidence was insufficient to warrant a verdict for the plaintiff; and to direct a verdict for the defendant. The judge refused both requests.

The defendant then requested the judge to give the following instruction: " If the way was too narrow for the proper or easy passage of two vehicles upon the constructed way, going in opposite directions, and the injury to the plaintiff was caused by the carriage in which she was riding coming in collision with the hack going in the opposite direction, although such hack was where it might legally have been under the circumstances, and although the constructed way at the place of the injury was too narrow to have permitted the carriage in which the plaintiff was riding to have been turned aside so as to have avoided the hack and passed it without contact, yet the plaintiff cannot recover."

This was refused; and thereupon the defendant requested the judge to give the following instructions:

" If the injury to the plaintiff was caused by a collision with the hack, and the same at that time had not been driven to the right of the middle of the travelled path, and the injury would not have happened except for such collision on the easterly side of the middle of such path, then the alleged defect would not be the sole cause of the injury, and the plaintiff cannot recover.

" If the injury to the plaintiff was caused, not by reason of the carriage in which she, the plaintiff, was riding going off the surface of the road and partially down the slope, but by reason of its coming against the hack, the plaintiff cannot recover; nor if the injury was caused in part by a defective condition of the way and by the collision with the hack."

The judge refused to give these instructions; and instructed the jury as follows:

" Persons injured through a defect or want of repair, or of sufficient railing, in or upon a highway, which might have been remedied, or the injury from which might have been prevented, by reasonable care and diligence on the part of the town obliged to repair such highway, may recover damages sustained by such injury, not exceeding $4000, provided such town had reasonable notice of such defect, or might have had notice thereof by the exercise of proper care and diligence on the part of such town.

 "A highway is to be taken to be that part thereof adapted to travel and use, and travelled and used as a highway, and a town required to maintain such a highway must keep such travelled and used part of the highway reasonably safe and convenient for public travel at all times, and, neglecting that duty, would be responsible for the consequences to any person injured through that neglect. Towns are not required to cause these highways to be lighted by night.

"Towns are not required to maintain ways of any particular width, and they are not required to erect or maintain barriers or railings along the sides of a highway, unless there is in close proximity to the sides of a highway a dangerous place, which causes the highway, as travelled and used, to be unsafe to a person travelling there with due care. Towns are not required to erect railings along the sides of a highway, to prevent travellers from straying therefrom.

"The law has not undertaken to define at what distance in feet or in inches a dangerous place must be from the highway in order not to be in close proximity to it.

"The duty of a town to erect railings in a given place arises out of the decision of the practical question, by the good sense and experience of a jury, whether at that place travel on the highway is endangered by a dangerous place so near to the highway, in view of the width of the road, that a traveller thereon, using due care to travel within its limits, is in danger of injury by that dangerous place.

"In the case on trial the questions are, first, Has the plaintiff proved that, at the place of her injury, there was a defect in the highway, which the town of Hudson was required in law to remedy?

"By the evidence, the jury must ascertain that there was such a defect, what it was, and that it had to the plaintiff's injury the relation of cause to effect, and of sole cause and sole effect. By the instruction that the plaintiff must prove that a defect in the highway, or a dangerous place in close proximity to it, causing the highway to be practically unsafe, was the sole cause of her injury, the jury will not understand that the plaintiff must prove that her injury was caused solely by her coming in contact with a defect in the highway. The plaintiff's injury, however, must

have been caused by contact with the defect, or by a collision of her carriage with another carriage, which was inevitable, in avoiding that defect. If the plaintiff's carriage, by a defect in the highway, was practically forced into collision with another carriage, and that collision caused her injury, in legal effect the defect caused her injury; but the jury must find, to authorize such conclusion, that the plaintiff's carriage would not have come in collision with another carriage, to her injury, if there had not been in the highway a defect at the place of her injury.

" What care was exercised by the plaintiff may be ascertained by the testimony of the plaintiff and her husband, if the jury believe that they could accurately remember and have honestly related what care was exercised immediately before and at the time of her injury. It may be more decisively ascertained by the testimony of the consequences of the collision, indicating the speed of the plaintiff's carriage and the force of the collision."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*C. Robinson, Jr. & J. T. Joslin*, for the defendant.

*W. B. Gale & S. W. Trowbridge*, for the plaintiff.

FIELD, J. Whether the plaintiff or the plaintiff's husband was in the exercise of due care was for the jury to determine.

The defendant contends that the evidence failed to show that the injury was caused solely by a defect in the way, and was insufficient to warrant a verdict for the plaintiff; that the real cause of the injury was the collision; that the last two instructions requested should have been given; and that the instructions given were not substantially the same in meaning as those requested.

We think there was evidence for the jury, that the injury was caused solely by the tipping of the buggy, and that this was caused by its wheels running over the shoulder of the road and upon the steep slope on the easterly side of it; and that this slope was of such a character, and so near to the travelled part of the road, as to make the road itself dangerous to persons travelling upon it. See *Harris* v. *Newbury*, 128 Mass. 321.

The exceptions find " that the injury to the plaintiff came either from her fall upon her husband when the buggy tipped, or from the collision of the buggy with the hack." Upon the

relation of the collision to the cause of the injury, the court in-
structed the jury that the defect must be the sole cause of the
injury, but by that "the jury will not understand that the plain-
tiff must prove that her injury was caused solely by her coming
in contact with a defect in the highway. The plaintiff's injury,
however, must have been caused by_ contact with the defect, or
by a collision of her carriage with another carriage, which was
inevitable, in avoiding that defect. If the plaintiff's carriage,
by a defect in the highway, was practically forced into collision
with another carriage, and that collision caused her injury, in
legal effect the defect caused her injury; but the jury must find,
to authorize such conclusion, that the plaintiff's carriage would
not have come in collision with another carriage, to her injury, if
there had not been in the highway a defect at the place of her
injury." If then the jury found that the injury was caused by
collision with the hack, the jury must also have found that the
collision was rendered inevitable in avoiding the defect, and
would not have happened without it. As the jury must have
found that the plaintiff was in the exercise of due care, and that
there was a defect in the way which might have been remedied
by reasonable care on the part of the town, of which the town
reasonably had notice, the question is whether the injury was
received "through" the defect, or, in other words, whether the
defect was the proximate cause of the injury. If the plaintiff,
in the exercise of due care, had jumped from the buggy to avoid
apparently imminent danger from the position into which she
had been brought by the defect, and, in so doing, had suffered
the injury, she could maintain the action. *Sears* v. *Dennis*, 105
Mass. 310. *Williams* v. *Leyden*, 119 Mass. 237. *Lund* v. *Tyngs-
boro*, 11 Cush. 563.

If the plaintiff's husband voluntarily turned the horse to the
left, to avoid the danger of the buggy's tipping over, and this
was done under a reasonable apprehension that the buggy would
otherwise tip over in consequence of the slope which constituted
a defect in the way, and the result was the collision and the in-
jury, the defect would still be considered as the cause of the
injury, if the plaintiff and her husband used due care. If the
horse turned to the left without any action on the part of
the driver, and this was the reasonable thing to be done in

consequence of the danger of the buggy's tipping over if he continued on his course, the same conclusion follows. The apparent danger must of course be such that the means taken to avoid it are reasonable under the circumstances. If the injury was caused by the combined effect of the defect in the way and of the negligence of the driver of the hack, the plaintiff cannot recover; but this requires that there should be two concurrent operative causes of the injury. *Kidder* v. *Dunstable,* 7 Gray, 104. *Rowell* v. *Lowell,* 7 Gray, 100.

In *Bemis* v. *Arlington,* 114 Mass. 507, the stones the sight of which frightened the horse were held not to be a defect in the way; and, if the ridge was a defect, it was but remotely connected with the injury.

The last two requests for instructions do not deal with the question which arises if the collision was caused by the use of reasonable means to avoid the danger caused by the defect in the way. So far as these requests were true statements of the law, they were substantially given in the charge. The plaintiff was permitted to recover only if the defect was the sole cause of the injury; or, in case the collision was the immediate cause of the injury, only if it was inevitable in order to avoid the defect, and was "practically forced" upon the plaintiff by the defect, without which the injury would not have occurred.

The instruction given, as applied to the evidence, seems to us as favorable to the defendant as an instruction that, if the plaintiff and her husband, using due care as travellers upon the highway, were, by a defect in it, exposed to imminent danger to life and limb, and, as a reasonable precaution to avoid this danger, her husband turned the horse to the left, whereby the buggy was brought into collision with the hack, which otherwise would not have happened, and thus the plaintiff suffered injury, the defect may be considered as the sole cause of the injury. The defendant did not ask for any further instructions upon the nature of the necessity which would justify the plaintiff or her husband in voluntarily incurring the risk of the collision, and we cannot say that the instructions given were misleading.

*Exceptions overruled.*