## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS

AT THE

## MARCH TERM, 1896.

---

## (*Continued from Volume 66.*)

---

ABRAHAM FRAUENTHAL *et al.*, Respondents, v. LACLEDE GASLIGHT COMPANY, Appellant.

St. Louis Court of Appeals, March 24, 1896; Motion for Rehearing Overruled May 19, 1896.

1. **Contributory Negligence**: CONCLUSIVENESS OF EVIDENCE: CONTACT WITH ELECTRIC LIGHT WIRE. An electric light wire broke and fell to the ground on a public street. A storekeeper approached it with insulated pliers in order to cut it. He was followed by a young man who was in his seventeenth year, and was possessed of unusual intelligence for his age. The latter was warned to leave the wire alone, and knew of the danger of contact, but, nevertheless, after first winding a handkerchief around his hand, reached over the storekeeper's shoulder, took hold of the wire, and was killed by the shock. *Held*, that the decedent was, as a matter of law, guilty of contributory negligence.

2. ———: EFFECT OF INFANCY: LAW AND FACT. The presumption is that a youth of fourteen years, or more, possesses sufficient comprehension to be capable of, and chargeable with, contributory negligence.

VOL. 67 app—1　　　　　　　　　　　　　　　(1)

3. **Negligence:** SUFFICIENCY OF EVIDENCE: BREAK IN ELECTRIC LIGHT WIRE. The wire above mentioned took fire the evening before, and broke less than ten minutes before, the accident. There was no evidence that the electric light company was advised of the injury to it, nor that it had been in use sufficiently long to need replacement, nor that it was defective. There was evidence that it was, of good and sound material, and, according to the weight of the evidence, it was of the kind generally in use throughout the country for outdoor service. *Quaere*, whether there was any substantial evidence of negligence on the part of the electric light company.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

REVERSED.

*Henry Hitchcock* for appellant.

Defendant's instruction for nonsuit, at the close of the trial, should have been given. From the whole proof, on the undisputed facts, it conclusively appeared that if Earl E. Frauenthal had not taken hold of the wire, the injury to him would not have happened; also, that he took hold of it voluntarily and knowing that it was dangerous. This was a negligent act on his part, and was the proximate and efficient cause of his death. It was, therefore, the duty of the trial court to instruct the jury that, on the pleadings and proof, the plaintiffs could not recover. *Hicks v. Railroad*, 46 Mo. App. 304, 310; *Buesching v. Gaslight Co.*, 73 Mo. 220, 229, 233; *O'Donnell v. Patton*, 117 Mo. 13, 21; Beach on Contributory Negligence, sec. 37, and notes; *Ridenhour v. Railroad*, 102 Mo. 287; *Powell v. Railroad*, 76 Mo. 80, 83; *Dlauhi v. Railroad*, 105 Mo. 655; *Prewitt v. Eddy*, 115 Mo. 304; *Reichenbach v. Ellerbe*, 115 Mo. 595; *Weber v. Railroad*, 100 Mo. 201.

*Sale & Sale* for respondents.

Plaintiffs made out a *prima facie* case of negligence by showing that the defendant's wire was broken,

was lying upon a public highway, and that it killed young Frauenthal. *Wise v. Railroad*, 84 Mo. 178; *Reed v. Railroad*, 50 Mo. App. 505; *Haynes, Adm'r, v. Raleigh Gas Co.*, 144 N. C. 203; *Keitel v. Railroad*, 28 Mo. App. 638; *Griveaud v. Railroad*, 33 Mo. App. 548, 469; *Giraudi v. Electric Improvement Co.*, 107 Cal. 120. This leaves out of view evidence of defective insulation, which was ample in itself to sustain the verdict of the jury. The act of Earl Frauenthal in taking hold of the wire was not a new responsible cause, such as would defeat the right of recovery in this case. *Burger v. Railroad*, 112 Mo. 238; *Southwestern, etc., Co. v. Robinson*, 16 L. R. A. 545; *Bourget v. City of Cambridge*, 56 Mass. 391; *Hayes v. Town of Hyde Park*, 153 Mass. 514; *McDonald v. Snelling*, 14 Allen, 290; *Haynes, Adm'r, v. Raleigh Gas Co.*, supra. The act of Earl Frauenthal in taking hold of the wire, under the circumstances detailed in evidence, did not constitute contributory negligence as a matter of law. *Texarkana Light Co. v. Orr*, 27 S. W. Rep. 66; *Burger v. Railroad*, supra; *Haynes, Adm'r, v. Raleigh Gas Co.*, supra; *Wallace v. Railroad*, 26 Ore. 174. The negligence of defendant being a disregard of municipal regulations, contributory negligence on the part of the deceased, if proved, would not avail as a defense. *Mauerman v. Railroad*, 41 Mo. App. 357; *Dunkman v. Railroad*, 95 Mo. 232; *Bergman v. Railroad*, 68 Mo. 678. Contributory negligence can not be predicated, as a matter of law, upon the conduct of an infant. *Wallace v. Railroad*, supra; *Spillane v. Railroad*, 111 Mo. 555.

Rombauer, P. J.—The plaintiffs were the parents of Earl E. Frauenthal, who was killed on a public street by contact with an electric wire owned and operated by the defendant. They brought this suit to recover damages for such killing, and upon its trial

recovered a verdict and judgment for $1,112.75. The
defendant appeals and assigns numerous errors, of
which we shall notice only one, as we deem it fatal
under the uncontroverted facts to plaintiff's recovery.

The defendant's answer was a general denial, and
the plea of Earl E. Frauenthal's contributory negli-
gence.   At the close of the plaintiff's evidence, and at
the close of the entire evidence, the defendant asked
an instruction that the plaintiffs could not recover.
These instructions the court refused, and their refusal
constitutes the main error complained of.

The plaintiffs' evidence tended to show the follow-
ing facts:   The defendant is a corporation, which at
the date of the grievance complained of had a contract
with the city of St. Louis for lighting its streets by
electricity.   In doing so, it had a wire strung on poles
near the curb on the north side of Franklin avenue.  This
wire caught fire from some causes not clearly appearing
on the evening of one day, and on the morning of
the next it broke and dropped to the ground near the
curb.   One Reinholz had a store close to the broken
wire, and the plaintiffs' son had called on him that
morning for a friendly chat.   The wire broke while the
son was in the store or immediately after he left.
Reinholz, anticipating some danger to the passers-by,
approached the fallen wire with a pair of insulated
pliers for the purpose of cutting it.   He knew that the
wire was dangerous, and that a contact with it by any-
one might prove fatal.   While there is some slight
contradiction in his testimony, the only rational con-
clusion that can be drawn from it is that he expressed
that fact in the presence and hearing of the plaintiffs'
son, who had in the meanwhile returned.   He testifies
that he told the plaintiffs' son:   "I will go over and
cut that wire, or some of those children will get killed."
He testified before the coroner's jury shortly after the

accident that the plaintiffs' son came back and asked
him: "What is that?" and that he told him: "The
wire is broke; I am going over to take it out of the way,
or somebody will get killed." A number of persons were
present at the time, but all stood aloof at some distance
from the wire, save the plaintiffs' son and Reinholz,
who walked toward the wire, Reinholz preceding.
When Reinholz reached the wire, he took hold of it
with his insulated plier. The plaintiffs' son followed
him, and, reaching over his shoulder, took hold of the
wire with his hand, having first wound a handkerchief
around his hand, and was immediately precipitated to
the ground by the shock, of which he died shortly
thereafter.

The plaintiffs' son was in his seventeenth year,
fully developed, over six feet tall, intelligent, of studi-
ous habits, and was at the time of his employment
filling a responsible position in one of the wholesale
houses of the city. That he knew of the danger of
approaching the fallen wire unguarded is placed beyond
all controversy by the plaintiffs' own evidence. All
the surrounding circumstances establish this fact be-
yond dispute, even if we leave out of consideration the
further fact that he was distinctly informed of the
danger. His own mistaken attempt to insulate his
hand before he reached for the wire admits of no other
rational construction. That he was warned by appear-
ances, and by the conduct of all those standing around,
is equally clear. So far the plaintiffs' evidence.

The defendant introduced five witnesses to the
accident, all of whom were entirely disinterested resi-
dents of the neighborhood. They all testified to the
fact that, although the number of those was great who
had gathered around the fallen wire, and many of them
were children, they all stood aloof, appreciating the
danger of a contact. Several of these witnesses testi-

fied that they loudly warned Reinholz and the plaintiffs' son to leave the wire alone; that some people tried to throw a board at the wire, standing at a distance. The defendant also introduced the evidence of Reinholz before the coroner's jury, from which it appeared that he told the plaintiffs' son that he was going to take the wire out of the way or somebody would get killed; that the plaintiffs' son went across the street with him, and that, as soon as Reinholz stepped upon a plank next to the wire, he was shocked and jumped back; that he then walked around the wire, and was told by plaintiffs' son to wind it around the post, to which he replied: "No, I will cut it;" that, when he reached out with the pliers to cut the wire, he saw the hand of plaintiffs' son wrapped in a handkerchief reach over his shoulder, and that he thereupon called out: "My God, don't do that;" but that it was too late—the plaintiffs' son had taken hold of the wire with the fatal result above indicated.

We hold that the court erred in refusing the instruction in the nature of a demurrer to the evidence at the close of the plaintiffs' case. Taking the most favorable view of plaintiffs' evidence, it shows not only such contributory negligence on the part of their son as debars them of recovery, but it further shows that that negligence was not in contemplation of law simply concurring but was the direct and sole *immediate* cause of the accident. The defendant's evidence on that subject, instead of aiding the plaintiffs' case, makes the apparent negligence more glaring. The plaintiffs' counsel urge that contributory negligence can not be predicated as a matter of law upon the conduct of an infant, and cite in support of the proposition *Wallace v. Railway Company*, 26 Oregon, 174, where the infant in question was six years old, and *Spillane v. Railroad*, 111 Mo. 555, where the infant in question was eight

years old. The plaintiffs' counsel entirely overlooks the fact that the test in such cases is not infancy, but maturity; it is want of capacity and not nonage. There is absolutely nothing in the plaintiffs' case which would indicate that their son was not fully matured, so as to be aware of the danger of coming into contact with a live electric wire. Even if he had not been fully aware of it before that day, the undisputed facts that he saw the people standing around keep aloof and avoid the contact, that he saw Reinholz approach the wire with caution although armed with an insulated plier, and that he himself endeavored to secure an insulation which unfortunately proved ineffectual, place his knowledge of the existence of the danger of the contact beyond question. At best, it was not the danger but its extent which he did not know, the extent of the danger depending on the volt power of the electric current running through the wire. He was a mere volunteer and had not the excuse of relying on the superior judgment of anyone, nor could it be possibly held that he acted by an irrepressible impulse of danger to himself or others, as both he himself and others were in a position of perfect safety before he undertook the fatal task.

There is nothing in any of the cases relied on by the plaintiffs' counsel which is opposed to the views hereinabove expressed. The only one of the cases akin to this is *Haynes v. Gas Company*, 114 N. C. 203. There, a boy ten years old, while traveling on the sidewalk, attempted to remove an electric wire lying on it, and was injured. The judge deciding the case, in commenting on the evidence, said: "No witness testified that there was anything from which even an adult could have inferred that this wire was carrying a deadly current of electricity, or indeed any current at all." The evidence is then analyzed for the purpose of show-

ing that the surrounding circumstances conveyed no warning, and the judge concludes by saying: "We should be very loth to declare an adult guilty of negligence for grasping a wire such as this one under circumstances such as the defendant contends surrounds the accident." In *Graham v. Boston*, 156 Mass. 75, the question of contributory negligence did not arise at all. There the contact of the child was accidental, and the only question discussed and decided was whether the child was a traveler on the street within the meaning of the statute. The cases of *Flagg v. Hudson*, 142 Mass. 280, and *Hayes v. Hyde Park*, 153 Mass. 514, bear upon the question of concurrent cause only, and not on the question of contributory negligence.

While we desire to place our decision exclusively on the ground of the contributory negligence of plaintiffs' son, we have examined other parts of the record and find it exceedingly doubtful whether it contains any substantial evidence of *defendant's* negligence. There is no evidence that the defendant was advised of the defect of the wire, or that the wire had been in use for a sufficient length of time to need replacement, nor in fact that the wire was defective. The first discovery of some supposed defect by others was the preceding evening. The injury to the wire was presumably caused by its chafing against a pole recently erected by another corporation. The break of the wire preceded the accident less than ten minutes. The wire was what is known as weather proof wire, of the best grade, and the great weight of both the plaintiffs' and defendant's evidence concurs in characterizing such wire as the one generally used throughout the country for outdoor service, and as safer and superior for such service to the rubber coated wire which is used for indoor service. That companies using these danger-

ous appliances should be held to the very highest degree of care in preventing injury we readily concede, but we think no case has gone to the extent of holding them to the liability of absolute insurers against damage resulting from their own acts and the acts of others.

All the judges concurring, the judgment is reversed. Judge BOND concurs in the result.

### ON MOTION FOR REHEARING.

BIGGS, J.—It is asserted in the motion for rehearing that contributory negligence can not be predicated as a matter of law on the conduct of an infant; that this principle has been declared in *Burger v. Railroad*, 112 Mo. 238, and *Spillane v. Railroad*, 111 Mo. 555, and that on this point our opinion is opposed to the decisions in those cases.

In administering civil remedies the courts have found it difficult, if not impossible, to determine at what time an infant may be regarded as within the age of a possible discretion. Proceeding according to the principles of the criminal law, some of the courts hold that contributory negligence can not be imputed to a child under seven years of age, while others decide that the facts may be such as to warrant the submission of the questiont o the jury, "unless the child is of such tender years that the court may safely decide the fact." The language of the supreme court in the Spillane and Burger cases would indicate that the latter is the rule in this state. In *Spillane's* case it was said: "No arbitrary rule can be established fixing the age at which a child, without legal capacity for other purposes, may be declared wholly capable or *incapable* of understanding and avoiding the dangers to be encountered upon railway tracks. It is a question of capacity in each case." The rule was reasserted in the *Burger* case.

In the *Spillane* case the child was eight years old, and in the *Burger* case he was nine years old. At common law an infant between the ages of seven and fourteen years may be held for the commission of a crime, but the presumption is that he is incapable of harboring a criminal intent and it devolves on the prosecution to rebut the presumption. The same principle obtains in civil actions. The presumption there is that an infant under the age of fourteen years is *prima facie* incapable of exercising sufficient judgment so as to be chargeable with contributory negligence, and whether the evidence in a particular case is sufficient to rebut the presumption is always a question of fact for the jury, and not of law for the court. This is all that the *Spillane* and *Burger* cases decide. In both cases the boys were under fourteen years of age.

At common law an infant of fourteen years, or over, is for some purposes *sui juris*. He is presumed to have sufficient discretion and judgment to choose his own guardian, and he may contract a valid marriage. In criminal matters he is presumed to have sufficient mind and understanding to form or harbor a criminal intent. So, in civil cases, the presumption must be that his responsibility for his negligence commences at that age. The respondent argues that such a presumption can not be indulged until he reaches his majority. This argument is answered by the supreme court of Pennsylvania in the case of *Nagle v. Railroad*, 88 Pa. St. 35. It was there said: "The law fixes no arbitrary period when the immunity of childhood ceases and the responsibilities of life begin. For some purposes majority is the rule. It is not so here. It would be irrational to hold that a man was responsible for his negligence at twenty-one years of age, and not responsible a day or a week prior thereto. At what age, then, must an infant's responsibility for negligence be

presumed to commence? This question can not be answered by referring it to a jury. That would furnish us with no rule whatever. It would give us a mere shifting standard, affected by the sympathies or prejudices of the jury in each particular case. One jury would fix the period of responsibility at fourteen, another at twenty or twenty-one. This is not a question of fact for the jury. It is a question of law for the court. Nor is its solution difficult. The rights, duties, and responsibilities of infants are clearly defined by the text-writers, as well as by numerous decisions. Upon so plain a question it is sufficient to refer to Sharswood's Blackstone, volume 1, page 435, 464; Id. IV., p. 20, where we learn that fourteen is the age of discretion in males and twelve in females; that at fourteen an infant may choose a guardian and contract a lawful marriage. His responsibility to the criminal law is equally well settled. Under seven years of age an infant can not be guilty of felony, for then a felonious discretion is almost an impossibility in nature; but at eight years old he may be guilty of felony. Dalt. Just., chap. 147. Between the ages of seven and fourteen, though an infant shall be *prima facie* adjudged to be *doli incapax*, yet if it appear to the court and jury that he was *doli capax*, and could discern between good and evil, he may be convicted and suffer death. *After fourteen an infant is responsible for his crimes to the same extent as an adult.* * * * It, therefore, requires no strain to hold that at fourteen an infant is presumed to have sufficient capacity and understanding to be sensible of danger, and to have the power to avoid it. And this presumption ought to stand until it is overthrown by clear proof of the absence of such discretion and intelligence as is usual with infants of fourteen years of age." To the same effect is the case

of *Stone v. Railroad*, decided by the New York court of appeals and reported in 28 Am. Law Reg. 547.

Now, in the present case, it is admitted that the deceased was in his seventeenth year, and possessed unusual intelligence for a youth of his age. Therefore, his conduct must be measured or judged by the standard of an average prudent man, and, as all of the evidence showed that his conduct was in the circumstances inconsistent with the exercise of ordinary care, it became our duty to decide, as a matter of law, that he was guilty of contributory negligence. Judge BOND does not concur in the last paragraph.

The motion for rehearing will be denied.

St. Louis Court of Appeals, February 25, 1896; Motion for Rehearing Overruled May 19, 1896.