COUNTY COMMISSIONERS OF ANNE ARUNDEL
COUNTY

vs.

THOMAS E. COLLISON.

*Negligence*: *when actionable.* *County roads*: *liability of
Commissioners.*

A county may be made liable for an injury directly caused by
its negligence in allowing defects to remain in a public road.

p. 94

A county road was somewhat narrower than the width re-
quired by law, and at one point a pile of brush, etc., had been
allowed for a year to project some three or four feet upon the
road; on a dark night, at that point, two teams driving in oppo-
site directions at a moderate rate of speed came into collision,
and from the injuries thus received one of the horses was killed;
in an action for damages brought by the owner of the horse
against the County Commissioners, it was *held,* that there hav-
ing been no evidence in the case legally sufficient to connect the
accident with the width of the road, or the pile of brush, or
any other act of the County Commissioners, the latter were not
liable.                                          p. 95

Actionable negligence is an act, or omission of duty, which
is the proximate cause of an injury.                p. 95

*Decided December 6th, 1913.*

Appeal from the Circuit Court for Anne Arundel County (BRASHEARS, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Ridgely P. Melvin,* for the appellant.

*Robert Moss,* for the appellee.

*Constable*

BRISCOE, J., delivered the opinion of the Court.

The appellee brought suit against the appellant for damages for the loss of a horse, which was killed as the result of a head on collision between his horse and buggy, while being driven on the public road by his son, and a horse and buggy of another. The negligence relied upon, as stated in the declaration, was, that the "defendant suffered and allowed trees and bushes to be cut down and thrown into the public road * * * so that the portion of said road open for public travel was only of the width of eleven feet, and not wide enough for two teams to pass thereon." At the conclusion of the testimony of both parties, the Court granted both prayers offered by the plaintiff, which, however, do not appear in the record, and refused two offered by the defendant. The two prayers of the defendant asked the Court to withdraw the case from the jury, the first for the reason "that there was no legally sufficient evidence to show that any negligence on the part of the defendant was the proximate cause of the accident;" and the second, the usual one, that there was no legally sufficient evidence to entitle the plaintiff to recover. The rejection of these prayers constitute the only exception in this appeal.

It will be necessary, therefore, to review the testimony, practically all of which is undisputed. It appears from the testimony, offered upon the part of the appellee, that the road in question is a country road and has been in use for a great many years. It is what is termed a single track road for several hundred feet in proximity to the place of the accident, that is, that there is but one wagon track worn and used by the travelling public. The road is straight, with no obstructions upon or along this single track. That opposite the place of collision there was an accumulation of brush, covered with vines, which had been thrown there a year prior to the date of the accident by telephone linemen, and allowed to remain. This pile extended into the cleared portion of the road three or four feet further than the rest of the bushes growing along both sides of the road, and toward the track, but not to it. That the open space at this point was about eight feet, and that in order for teams to pass here, one would have to drive over a portion of the brush. The appellee's son, the driver, testified that the accident occurred on a dark night; that he had been in the habit of travelling over this road two or three times a week and had been over it two or three nights before the accident; that he had known this brush pile to be there for a year; that it made a shadow at this place; that he was jogging along at a moderate speed, and as was his custom, "letting the horse take his own course, and was driving with loose reins;" that he made no effort to pass the other team, because he did not see it until the collision took place; that the shaft of the other team penetrated the neck of his horse, from which injury it shortly died. The driver of the other team, called by the defendant, testified that his horse was travelling at a walk, and that the first he knew of the approach of the other team was from the collision.

The only dispute in the testimony is that the defendant's witnesses testified that, by actual measurement, the open space was thirteen feet in width; and the driver of the other

team testified that, immediately after the collision, the appellee's son had stated to him "I didn't see you. I was asleep." To which, the appellee's son testified that he had not said that, but that what he did say was "Somebody must have been asleep." However, in considering the questions raised, the testimony of the appellee will be taken to be true.

The appellee urged in support of his contention, not only that the pile of brush, as located, constituted an obstruction and defect, for which the appellant could be held liable for any injury resulting directly therefrom, but further, that the appellant was guilty of negligence in maintaining a public road narrower than that authorized by law, and was therefore liable to anyone injured by reason thereof. There can be no question but that the county can be made liable for an injury directly caused through its negligently allowing defects to remain in a public road. *Harford County* v. *Hause,* 106 Md. 439, and many other cases. Or like in the case of *Flagg* v. *Hudson,* 142 Mass. 288, cited by the appellee. But there must be some causal connection between the defect and the injury. In the *Mass. case,* the injury was occasioned through the plaintiff being compelled to pull his team away from a defect and thus, crashed into another team. In this case, there is not a particle of evidence, that the pile of brush compelled the team of the appellee to be diverted from its course by either the driver or by the horse instinctively shying from it. But on the other hand, the testimony shows that the brush pile had no part in the collision except in that the road at that point was, because of it, three or four feet narrower than on either side of it. That the brush pile was opposite the place of collision, appears a coincidence rather than a cause. Or if the injury had been caused by the appellee's son turning into the pile of brush, and had thereby suffered injury; or if the testimony showed he was prevented by the pile of brush from turning out of the way of the other team, and thus was run into, a different question altogether would be presented. But even assuming that it is *prima facie* negligence to allow

piles of brush to accumulate along and in public roads, or to have roads narrower than the statutory width, the difficulty is, in the absence from the record of any testimony connecting those conditions with the injury complained of, to assume that the injury was occasioned thereby. Conceding the negligence, the injury has to be traceable to it before there can be a liability.

This has been invariably held by this Court, and very recently in the case of *Young Co.* v. *Kabat,* 117 Md. 247, through JUDGE BURKE, it expressed this principle as follows: "Actionable negligence is an act, or omission of duty, which is the proximate cause of an injury. No matter to what extent, or in what respect a party may be negligent, such negligence does not constitute a cause of action, unless the negligence charged and the injuries sued for bear the relation of cause and effect. In legal contemplation, actionable negligence and injury are cause and effect." Therefore, unless the testimony tended to show that the negligence relied upon was the proximate cause of the accident, there was nothing upon which a jury could predicate a verdict for the party complaining, and the Court should have declared that as a matter of law, and directed the jury so to find.

With this opinion of the law, as applicable to the facts of this case, we think the prayers of the appellant should have been granted, and we are therefore compelled to reverse the judgment.

> *Judgment reversed without a new trial,*
> *with costs to the appellant.*