JOHN· T. BRAMBLE AND ASSOCIATED EMPLOY-
ERS' RECIPROCAL *vs.* WILLIAM SHIELDS
ET AL.

*Workmen's Compensation—Mental Disease—As Natural Result
of Injury—Instructions—Expert Evidence—Form of
Question—Amendment.*

A prayer that if the jury find from all the evidence that the
present disability of the claimant is directly attributable, with
reasonable certainty, to the accidental personal injury sustained
by him while in the employ of defendant employer, their ver-
dict on that particular issue must be for the claimants, was not
objectionable as submitting a question of law to the jury.

p. 503

The evidence of an expert that claimant's mental disease re-
sulted from an accident, caused by the caving in of a trench in
which he was working, *held* sufficient to take the case to the
jury.                                         p. 503

In Code, art. 101, sec. 63, subsec. 6, providing that "injury"
and "personal injury" mean only accidental injuries arising out
of and in the course of employment, and such disease or infec-
tion as may naturally result therefrom, the word "naturally"
does not mean "according to the usual course of things," in the
sense of something to be contemplated or expected, it making no
difference whether the results are usual or unusual, if there is a
direct causal connection between the injury and the disease, so
that the disease is directly attributable to the injury.

pp. 504-506

In cases arising under the Workmen's Compensation Act, the
question of negligence is excluded, and the only test is whether
the accidental injury arose out of and in the course of employ-
ment.                                         p. 506

In the case of a claim on account of mental disease claimed
to be the result of an accident, it was proper for the court, after
instructing the jury that the burden was on the claimant to
show that the disease was the "natural result" of the injuries
received by him in the accident, further to instruct the jury

that the term "natural result" means that it must be shown that there is a causal connection between the accident and the mental disease; or that the mental disease is, with reasonable certainty, directly attributable to the accident. p. 506

An expert may properly give his opinion, based on the testimony in the case, which he has heard, that a mental disease from which a claimant under the Workmen's Compensation Act is suffering, is the result of the accident or injury. p. 507

Though a question asked an expert was not in form hypothetical, its allowance was not prejudicial error, it being manifest from the testimony as a whole that the question was understood as asking for an opinion based on the testimony which the witness had heard. p. 507

Appeals under the Workmen's Compensation Act being informal, it was proper, on an appeal by the claimant from a decision of the Industrial Accident Commission, to permit an amendment adding the name of the claimant's wife and next friend as appellant. p. 507

*Decided December 4th, 1925.*

Appeal from the Circuit Court for Frederick County (WORTHINGTON, J.).

Proceeding by William Shields against John T. Bramble and Associated Employers' Reciprocal, under the Workmen's Compensation Act, in which Mrs. William Shields, claimant's wife and next friend, was joined as appellant, on appeal to the circuit court. From a judgment in such court in favor of said Shields and wife, the defendants appeal. Affirmed.

The claimants' first prayer as modified was as follows:

The appellants pray the court to instruct the jury that if they find from all the evidence in this case that the present disability of William Shields is directly attributable with reasonable certainty to the accidental personal injury sustained by him on June 27, 1922, while in the employ of John T. Bramble, then their verdict as to the first issue shall

be for the appellants, and their answers to said first issue shall be "yes."

The defendants' special exceptions to the claimants' first prayer as modified were as follows:

The defendants except generally to the granting of the appellants' first prayer as modified and specially except to the granting of said prayer because (1) it submits a question of law to the jury and (2) because there is no evidence in this case legally sufficient to show that the present disability of William Shields is directly attributable with reasonable certainty to the accidental personal injury received by him in June 27, 1922.

The defendants' prayers were as follows:

*First.*—The court instructs the jury that there is no evidence in this case legally sufficient to show that the mental disease with which William Shields is afflicted is the natural result of the injury received by him while in the employ of John T. Bramble on June 27, 1922, and therefore their verdict as to the first issue must be for the defendants and their answer to said issue must be "no."

*Second.*—The court instructs the jury that there is no evidence in this case legally sufficient to show that William Shields is temporarily totally disabled by reason the injuries received by him while in the employ of John T. Bramble on June 27, 1922, and therefore their verdict as to the second issue must be for the defendants and their answers to said issue must be "no."

*Third.*—The court instructs the jury that there is no evidence in this case legally sufficient to show that William Shields is permanently totally disabled by reason of the injuries received by him while in the employ of John T. Bramble on June 27, 1922, and therefore their verdict as to the third issue must be for the defendants and their answers to said issue must be "no.".

*Fourth.*—The court instructs the jury that the undisputed evidence in this case is that William Shields is now suffer-

ing with a mental disease and that his present disability is
the result thereof and, there being no evidence in this case
legally sufficient to show that said mental disease is the nat-
ural result of the injuries received by said William Shields
on June 27th, 1922, while in the employ of John T. Bramble,
the verdict of the jury as to the second and third issues
should be for the defendants and their answers to each of
said issues should be "no."

*Fifth.*—The court instructs the jury that the burden is
upon the plaintiff to establish by a preponderance of affirma-
tive evidence, to the satisfaction of the jury, that the mental
disease with which Shields is afflicted is the natural result
of the injuries received by him while in the employ of John
T. Bramble on June 27, 1922, and if the evidence in this
case should be such as to leave the minds of the jury in a
state of even balance as to whether said mental disease is the
natural result of said injuries, their verdict as to the first
issue should be for the defendants and their answer to said
issue should be "no."

And the jury is further instructed that the term "natural
result" means such a result as arises naturally, that is, ac-
cording to the usual course of things.

Which prayer the court modified to read as follows:

The court instructs the jury that the burden is upon the
plaintiff to establish by a preponderance of affirmative evi-
dence, to the satisfaction of the jury, that the mental dis-
ease with which Shields is afflicted is the natural result of
the injuries received by him while in the employ of John T.
Bramble on June 27, 1922, and if the evidence in this case
should be such as to leave the minds of the jury in a state of
even balance as to whether said mental disease is the natural
result of said injuries, their verdict as to the first issue
should be for the defendants and their answer to said issue
should be "no."

And the jury is further instructed that the term "natural
result" means that it must be shown that there is a causal
connection between the accident and the mental disease of
Shields; or that the mental disease with which Shields is

suffering is with reasonable certainty directly attributable to the accident.

*Sixth.*—The court instructs the jury that under the Workmen's Compensation Law, only such diseases are compensable as naturally, that is, in the usual course of things, result from accidental injuries arising out of and in the course of employment, and unless the jury find that the mental disease with which William Shields is afflicted is a disease as in the usual course of things results from injuries of such character as were received by him on June 27, 1922, while in the employ of John T. Bramble, and unless they further find that said mental disease did, in point of fact, result naturally, that is, according to the usual course of things, from said injuries, the verdict of the jury should be for the defendants as to the first issue, and their answer to said issue should be "no."

Which prayer the court modified to read as follows:

The court instructs the jury that under the Workmen's Compensation Law, only such diseases are compensable as naturally result from accidental injuries arising out of and in the course of employment, and unless the jury find that the mental disease with which William Shields is afflicted, is a disease, naturally resulting from injuries of such character as were received by him on June 27, 1922, while in the employ of John T. Bramble, and unless they further find that said mental disease did, in point of fact, result naturally from said injuries, the verdict of the jury should be for the defendants as to the first issue, and their answer to said issue should be "no."

*Seventh.*—The court instructs the jury that not every disease which results from accidental injuries received in the course of employment is compensable under the Workmen's Compensation Law, and that no provision is made in said Law for compensation of disability caused by a disease which is the accidental result of such injuries, and if the jury find from the evidence in this case that the mental disease with which William Shields is afflicted is an accidental result of the injuries received by him on June 27, 1922, while in the

employ of John T. Bramble, the verdict of the jury as to the first issue should be for the defendants and their answer to said issue should be "no."

*Eighth.*—The court instructs the jury that not every disease which results from accidental injuries received in the course of employment is compensable under the Workmen's Compensation Law, and that no provision is made in said law for compensation of disability caused by a disease which is not the natural result of such injuries, and if the jury find from the evidence in this case that the mental disease with which William Shields is afflicted is not the natural result of the injuries received by him on June 27, 1922, while in the employ of John T. Bramble, the verdict of the jury as to the first issue should be for the defendants and their answer to said issue should be "no."

*Ninth.*—The court instructs the jury that not every disease which results from accidental injuries received in the course of employment is compensable under the Workmen's Compensation Law, and that no provision is made in said law for such compensation of disability caused by a disease which is the unusual result of such injuries, and if the jury find from the evidence in this case that the mental disease with which William Shields is afflicted is an unusual result of the injuries received by him on June 27, 1922, while in the employ of John T. Bramble, the verdict of the jury as to the first issue should be for the defendants and their answer to said issue should be "no."

*Tenth.*—The court instructs the jury that not every disease which results from accidental injuries received in the course of employment is compensable under the Workmen's Compensation Law, and that no provision is made in said law for compensation of disability caused by a disease which is the unusual accidental or abnormal result of such injuries, and if the jury find from the evidence in this case that the mental disease with which William Shields is afflicted is an unusual, accidental or abnormal result of the injuries received by him on June 27, 1922, while in the employ of John T. Bramble, the verdict of the jury as to the first issue

should be for the defendants and their answer to said issue should be "no."

The cause was argued before PATTISON, ADKINS, OFFUTT, BOND, and PARKE, JJ.

*Forrest Bramble* and *Edward H. Burke,* with whom was *Jacob Rohrback* on the brief, for the appellants.

*W. Clinton McSherry,* with whom were *Charles McC. Mathias* and *Leslie N. Coblentz* on the brief, for the appellees.

ADKINS, J., delivered the opinion of the Court.

William Shields was injured on June 27, 1922, while working in a trench. It caved in and he was covered by earth and rocks up to his neck or shoulders and in extricating him it was found, according to the report and testimony of the attending physician, that both bones of his right leg were fractured, that there were lacerations upon the entire body, including laceration at left groin about seven inches long, and a facture of the fifth lumbar vertabrae. He was at once taken to a hospital, where he remained about four weeks, when he was removed to his home, where his leg was in a cast for four weeks longer. He worried about his condition, imagined his spine was decaying, and that he would never get well. According to Dr. Jamison, his attending physician, his mind began to get bad six weeks after he returned home, or about the middle of September, and it continued to get worse all the time, until he was taken to Mt. Hope on February 28th, 1923. He began to insist that his spinal cord was decaying about three or four weeks after he got home from the hospital. Dr. Jamison thought some one might have told him about the case of a man who had his back broken in an accident resulting in his death, and that this might have prayed on Shields' mind. But the doctor did not know as a matter of fact that Shields had ever heard of it, as he never talked to the doctor about it. Shields never

did any work after the accident, although he seemed to get well physically and the X-ray failed to disclose any injury to the back. The doctors consequently assumed that the pains in the back of which he complained were delusions, and that his fear that his spinal cord was decaying was an obsession.

The accident was promptly reported to the Industrial Accident Commission, which found him temporarily totally incapacitated, and on July 6, 1922, ordered "that compensation at the rate of $8.00 per week, payable weekly, be paid to the said William Shields by John T. Bramble, employer, and Associated Employers' Reciprocal, insurer, during the continuance of his disability subject to the Workmen's Compensation Law, said compensation to begin as of the 1st day of July, 1922, and that final settlement receipt be filed with the commission in due time."

On November 28th, 1922, Dr. John B. Brauner certified to Mr. William Bramble that he had examined Shields and did not find any results in his back from the injury he sustained from his accident; that "he is suffering from neurasthenia due to constantly thinking that he will not get well." On Nov. 27th, 1922, Dr. Jamison made a similar report to Mr. John T. Bramble.

On January 3rd, 1923, a final settlement receipt was filed with the commission signed by Shields and dated December 29th, 1922.

On April 28th, 1923, a petition was filed in the case by Mrs. William S. Shields, "the dependent wife and next friend of William S. Shields," alleging that the settlement receipt had been signed by Shields when he was mentally incapacitated at the instance of a representative of the insurer; also setting forth the fact of his confinement in Mt. Hope, and alleging that his mental condition was a direct result of his injury, and praying:

1. That the case be reopened and a further hearing had.
2. That the alleged receipt be set aside.

3.   That after a full hearing the commission make such award as may seem proper and requisite.

A hearing was granted on this petition and, after taking the testimony offered by the petitioner, the commission passed an order declaring the settlement receipt null and void, and directing a further hearing on the question of an award. And at such further hearing it was ordered by the commission, on August 18th, 1923, "that payment of compensation ordered paid under order of the commission passed on July 6, 1922, cease as of December 22, 1922."

Whereupon a petition in the nature of an appeal was filed in the Circuit Court for Frederick County in the name of William Shields, by his attorneys, appellant, against John T. Bramble and Associated Employers' Reciprocal, Insurer, appellees.

A motion to dismiss the appeal was filed on the ground that the appeal was taken by an insane person by attorneys. This motion was overruled and leave granted the claimant to amend the petition as requested by written application to the court.

Thereupon an amended petition for appeal was filed in the name of William Shields and Mrs. William S. Shields, his wife and next friend, appellants, against John T. Bramble, Employer, and Associated Employers' Reciprocal, Insurer, appellees.

The case proceeded to trial on three issues submitted to the jury at the request of the respective parties, viz. :

1.   Whether the mental disease with which William Shields is afflicted is the natural result of the injuries received by said William Shields while in the employ of John T. Bramble on June 27, 1922.

2.   Is William Shields temporarily totally disabled?

3.   Is William Shields permanently totally disabled?

The answer of the jury was "yes" on the first and third issues, and "no" on the second.

On which verdict judgment was entered reversing the order of the commission of August 18th, 1923, and remand-

ing the case to the commission "to the end that it pass an order or orders awarding the claimant such sum per week as is provided by law, during permanent total disability, but not to exceed in the aggregate the sum of $5,000." From that judgment this appeal was taken.

There are four bills of exception, three to the rulings of the court on evidence and one to the ruling on the prayers, and on defendants' special exception to claimants' first prayer. The Reporter is requested to set out all the prayers and the special exception.

We discover no error in the ruling on the prayers and the special exception.

Claimants' first prayer as modified is unobjectionable if there was any case to go to the jury. There is no force in the special exception that this prayer submits a question of law to the jury.

Defendants' first four prayers are demurrers to the evidence and were properly refused. There was evidence legally sufficient to support a finding in favor of claimant. Dr. Flannery, chief resident physician at Mt. Hope, heard the evidence and from it testified as an expert that, in his opinion, the disease resulted from the accident. That was sufficient to take the case to the jury, there being nothing obviously improbable or fanciful in the conclusion reached by the expert from the testimony.

It is urged by appellants that Dr. Flannery testified that such a mental disease as that with which Shields was suffering could be the result of a number of causes, including loss of money and grief; and that there was evidence that these two things existed in Shields' case, one from the cutting off of his compensation allowance, and the other from the story he heard about the man dying from a broken back; and it is argued, as it does not clearly appear which was the cause, the jury should not be permitted to speculate about it. But Dr. Flannery distinctly stated that these two things could not have been the cause in the face of the history of the case. There is no testimony that Shields actually heard of

the man dying from a broken back, or, if he did, that it made
any impression upon him. As to the cutting off of the insur-
ance money, that did not occur, nor is there any evidence
that it was mentioned to Shields, until several months after
his mind became affected.

A uniform fallacy runs through all of defendants' other
rejected prayers, resulting from a misconception of the
meaning of the word "naturally" in subsection 6 of section
63 of article 101 of the Code, which reads as follows:

" 'Injury' and 'personal injury' mean only accidental
injuries arising out of and in the course of employ-
ment, and such disease or infection as may naturally
result therefrom."

Their contention is that "naturally" must be held to mean
"according to the usual course of things," in the sense of
something to be contemplated or expected; and for this they
rely upon the definition in *Furstenburg* v. *Fawcett,* 61 Md.
184; *Balto. & O. R. Co.* v. *Pumphrey,* 59 Md. 390; *Wins-
low Electric Co.* v. *Hoffman,* 107 Md. 635; *Middendorf* v.
*Milburn,* 134 Md. 393. These were all suits on contracts
and the court was stating the rule of damages in cases of
breach, viz., "When two parties have made a contract which
one of them has broken, the damages which the other party
ought to receive in respect of such breach of contract should
be such as may fairly and reasonably be considered either
arising naturally, *i. e.,* according to the usual course of
things, from such breach of contract itself, or, such as may
reasonably be supposed to have been in the contemplation of
both parties at the time they made the contract, as the prob-
able result of the breach of it."

In some jurisdictions a somewhat similar rule as to rea-
sonable and probable consequences applies in negligence cases.

See *Milwaukee & St. Paul Rwy. Co.* v. *Kellogg,* 94 U. S.
469 (cited in *State* v. *W., B. & A. Elec. Ry. Co.,* 130 Md.
611, and *Wilson* v. *Yates,* 137 Md. 54); *Scheffer* v. *Wash-
ington R. R.,* 105 U. S. 249 (cited in *Balto. City Passenger
Railway Co.* v. *Tanner,* 90 Md. 315). This, however, in the

sense that the result must have been such as might have been anticipated, is not the rule in Maryland, as established by a long line of cases.

In *Sloan v. Edwards,* 61 Md. 99, the action was for damages for an assault and battery, and plaintiff claimed that as a result thereof he became subject to convulsions and fits. It was held that, although the damages recoverable must be the natural and proximate consequences of the act complained of, such consequences include all damages of which the act was the efficient cause, even though the damages did not occur until sometime after the act done, and were not contemplated or foreseen by the wrong-doer.

In *Baltimore City Pass. Ry. Co. v. Kemp,* 61 Md. 74, a cancer developed in Mrs. Kemp's breast at a spot that had been bruised by the sudden starting of a street car from which she was about to alight. The doctors all said that it is impossible to be certain as to the cause of a cancer, but they agreed that the blow received by Mrs. Kemp was sufficient and may have been the cause of the development of the cancer in her case, and two of them stated that under the circumstances of the case they would attribute the cancer to that cause. It was said by Chief Judge Alvey, delivering the opinion of the Court: "It is not simply because the relation of cause and effect may be somewhat involved in obscurity, and therefore difficult to trace, that the principle obtains, that only the natural and proximate results of a wrongful act are to be regarded. It is only where there may be a more direct and immediate sufficient cause of the effect complained of, that the more remote cause will not be charged with the effect. If a given result can be directly traced to a particular cause, as the natural and proximate effect, why should not such effect be regarded by the law, even though such cause may not always, and under all condition of things, produce like results? It is the common observation of all, that the effects of personal physical injuries depend much upon the peculiar conditions and tendencies of the persons injured; * * * Hence the general rule is, that, in actions of tort like the present, the wrong-doer

is liable for all the direct injury resulting from his wrongful act, and that, too, although the extent or special nature of the resulting injury could not, with certainty, have been foreseen or contemplated as the probable result of the act done." See also *City Pass. Ry. Co.* v. *Baer,* 90 Md. 97; *Penn Steel Co.* v. *Wilkinson,* 107 Md. 574; *P., B. & W. R. Co.* v. *Mitchell,* 107 Md. 600; *General Accident, Fire & Life Assurance Corporation* v. *Homely,* 109 Md. 93; *Green* v. *Shoemaker,* 111 Md. 69; *Baltimore City Passenger Rwy. Co.* v. *Tanner,* 90 Md. 315; *State* v. *W. B. & A. Elec. Rwy. Co.,* 130 Md. 611; and *Wilson* v. *Yates,* 137 Md. 54.

But in cases arising under the Workmen's Compensation Law, the question of negligence is excluded, and with it the rule as to reasonable and probable consequence would also be excluded, if such rule were applicable here. The only test is, Did the accidental injury arise out of and in the course of employment? If it did, it makes no difference whether it was a normal or abnormal occurrence; and so with "any such disease or infection as may naturally result therefrom." It can make no difference whether the results are usual or unusual, if there is a direct causal connection between the injury and the disease, so that the disease is directly attributable to the injury.

We discover no error in the definition in defendants' amended fifth prayer. It is in accordance with the interpretation by the Pennsylvania Workmen's Compensation Board; *Banish* v. *Lehigh Coal & Navigation Co.,* and *Barnes* v. *Wm. Cramp & Sons Ship & Engine Building Co.,* Pennsylvania Workmen's Compensation Board, vol. 4, pages 262 and 366. Nor is it necessarily inconsistent with anything that was said in *Pollock* v. *Consolidation Coal Co.,* Maryland Workmen's Compensation Cases, vol. 1, page 217. That case must be considered in reference to the law as it then stood. The amendments which omitted the words "and unavoidable," following the word "naturally," left the latter word open to a more liberal interpretation. *Milwaukee* v. *Industrial Commn.,* 160 Wis. 238. It follows that there was in our opinion no error in the rejection of defendants' seventh,

ninth and tenth prayers, and in the modification of their fifth and sixth prayers.

We find no reversible error in the rulings on the evidence, which are the subject of the first three bills of exception. The first exception was to the refusal to strike out the opinion of Dr. Flannery that the mental condition of Shields is the result of the accident or injury. There was no objection to the question asked; and the opinion was that of an expert based on the testimony in the case, which the witness heard.

The second and third exceptions are of the same character, except that the questions were objected to. While in form these questions do not appear to be hypothetical, and are objectionable for that reason, it is manifest from the testimony as a whole that each of the questions was understood to ask for an opinion based on the testimony which the witness had heard, and we find no prejudicial error in the rulings.

The only remaining question is the refusal of the trial court to dismiss the appeal from the commission, and the permitting of an amendment adding the name of Mrs. William S. Shields, wife and next friend, as appellant.

Much the same character of amendment was sanctioned in *Baltimore* v. *Yost,* 121 Md. 366, and that was a proceeding of a more formal sort. In cases under the Workmen's Compensation Act it is provided that appeals shall be informal.

In any event no exception was taken, and no bill of exception signed relating to that ruling of the court, and it is not now open to review.

*Judgment affirmed, with costs to appellee.*