# THE MAYOR AND COUNCIL OF HAGERSTOWN, A BODY CORPORATE,

## *vs.*

# STELLA BLANCHE FOLTZ, BY HER FATHER AND NEXT FRIEND, CEITS R. FOLTZ.

*Municipal corporations: negligence; obstructions on sidewalks; proximate and remote causes of injury; taking case from jury.*

It is a maxim that the law looks to the proximate, but not to the remote, cause of an injury.                              p. 56

Unless the alleged negligence of the defendant was the proximate cause of the injury complained of, there can be no recovery.                                              p. 56

For consequences for which an act or omission is only a mere condition or remote cause the defendant is not liable.  p. 56

The Mayor and City Council of Hagerstown had permitted an obstruction to be and to remain for a long time on a sidewalk in violation of the city ordinances, which obstruction consisted in a stand or table for exhibition of wares before a shop window; an automobile, in being backed to make a short turn in the street, ran over the curb upon the sidewalk and crushed the infant equitable plaintiff against the said obstructoin and caused her painful injuries: *Held,* that the negligence of the municipality was not the proximate cause of the accident, and the court should have so declared as a matter of law and directed the jury to find a verdict for the defendant.      p. 60

*Decided June 19th, 1918.*

Appeal from the Circuit Court for Frederick County. (WORTHINGTON and PETER, JJ.)

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Alexander R. Hagner* (with whom was *Jacob Rohrback* on the brief), for the appellant.

*Omer T. Kaylor* and *F. G. Wagaman* (with whom was *Frank L. Stoner* on the brief), for the appellee.

PATTISON, J., delivered the opinion of the Court.

The infant appellee, Stella Blanche Foltz, by Ceits R. Foltz, her father and next friend, recovered judgment in the lower Court against the Mayor and Council of Hagerstown for personal injuries received by her in the manner hereinafter stated in the declaration.

The declaration contained three counts. A demurrer was sustained to each and all of them, but the second count was amended, under leave of the Court, and a demurrer filed thereto was overruled.

This amended count of the declaration alleged that the defendant pursuant to its charter rights and powers, passed an ordinance prior to the happenings of the injuries complained of, and which was then in force, making it unlawful for any person to obstruct in any way, any street, highway, lane, alley, crossing or sidewalk of Hagerstown; that for a long time prior to and at the time of the injuries complained of, a certain obstruction, to wit, a large table was placed on the sidewalk of said town, at or near the intersection of South Potomac and Antietam streets, and the defendant,

> "although it had notice of the violation of the provisions of the ordinance aforesaid, negligently, carelessly, and wrongfully took no measures whatever to enforce the provisions of said ordinance, and negligently, carelessly, and wrongfully permitted said obstruction to remain at the place aforesaid, and in consequence thereof the said obstruction was at the place aforesaid

on the said sidewalk at the time of the injuries herein-after alleged.

"That it was lawful for automobiles to turn around in the street opposite the said obstruction and *that by reason of the contour of said street and curb at said place,* that the defendant knew, or by the exercise of reasonable care should have foreseen that automobiles turning at said point were likely to pass from said street on to the sidewalk.

"That on or about the 10th day of April, A. D. 1916, the said Stella Blanche Foltz was lawfully pass-ing on and along the sidewalk of said Hagerstown near the obstruction aforesaid at the intersection of the streets aforesaid, and that an automobile was then and there being turned in said street and was then and there backed upon the sidewalk opposite said obstruc-tion, and that the body of the said infant was caught between the said automobile and said obstruction, and the said infant was by the obstruction aforesaid greatly torn, mangled and bruised and caused to suffer great bodily and mental pain and anguish and great and per-manent injuries, and that said injuries were so received by the said infant as a direct and immediate conse-quence of the aforesaid negligence of the defendant in the premises."

The amendment to the second count consists of the italic-ized words appearing in the above amended declaration.

The evidence discloses that the table mentioned in the declaration was upon the sidewalk in front of the grocery store of Ernest Miller, at the southwest corner of Potomac and Antietam streets, in said town, where it had been for a number of years prior to the happening of the accident.

This table used by Mr. Miller in placing thereon flower bulbs, vegetables, and other articles that were offered and ex-hibited by him for sale, was twelve feet in length, two and one-half feet in width, and one foot and nine inches in height, and sat against the front wall of the store building below the

show window of the store, the sill of which came within a few inches of the top of the table, in an angle caused by the projection of a stoop or steps out from said building upon the sidewalk extending to a point beyond the width of said table. The height of the stoop or steps being about the same as that of the table. The sidewalk in front of the store at the point where the table was located, was ten and one-half feet in width, that is to say, the distance from the front wall of the store building to the curbstone was ten and one-half feet, and the distance from the eastward, or outer side of the table to the curbstone was eight feet.

On the afternoon or evening of the accident, the infant plaintiff at that time five years of age, had gone with her mother to the store of Mr. Miller. The mother had made her purchase and had left the store and had turned to the right upon the sidewalk with the infant plaintiff to her left, she being between the front wall of the store building and her infant daughter, and while so walking upon the sidewalk with the infant plaintiff's right hand in her left hand, the automobile, owned by Clap and driven by one Kreitz, backed against and over the curb upon the sidewalk, and in some way, not very definitely stated in the testimony, caught the infant plaintiff between the rear part of the automobile and the table, inflicting the personal injuries complained of.

The mother, as she testified, did not observe the automobile until it was practically upon them, although at such time she had made only a few steps from the door of the store, which was upon the corner of the streets, and in making her exit through that door, and in turning to the right on South Potomac street, she faced that street at the point where the automobile was being turned. The evidence is not clear as to what part of the machine struck the table, but from the character of the break in the table, as described by the witnesses, it is most probable that it was the rear end of one of the rear springs of the automobile, and that the child was between the springs and was struck by some part of the machine which did not extend so far to the rear as the rear

ends of its springs. It is evident that the child was not caught between the table and that part of the auomobile which struck .the table, breaking the board upon it, for had she been so caught, we can not conceive how she could have escaped instant death. The noise of the impact was heard not only by Mr. Miller, who was in his store at the time, but by others across the street, which shows the force with which the automobile struck the table, and had the table not been there, the automobile, considering the force with which it was backed, would no doubt have gone to the wall of the store building, only two and one-half feet away, inflicting the same, if not more, serious injury to the child.

As it appears to us the real question in this case is, whether the alleged negligence of the defendant in permitting the table to remain upon the sidewalk in violation of the alleged ordinance was the proximate cause of the injuries complained of.

It is a maxim that the law looks at the proximate and not at the remote cause of an injury. Out of the application of this maxim grows the liability or non-liability of a defendant charged with the infliction of an injury by his negligence. Unless the alleged negligence of the defendant was the proximate cause of the injury of which the plaintiff complains, there can be no recovery. For consequences of which his act or omission was only a mere condition or remote cause, the defendant is not liable. The constantly recurring problem is: did the defendant's act or omission proximately cause the plaintiff's injury, and was such act or omission a want of ordinary care, or was the act or omission of the defendant only a remote cause or mere condition of the injury? No ultimate test of such character has yet been formulated. It is by analysis and synthesis rather than by definition that the distinction between proximate and remote cause must be made. 16 *Am. & Eng. Ency. of Law* 428.

In the case of *Young Co.* v. *Kabat,* 117 Md. 247, we said, speaking through JUDGE BURKE: "It is well settled that to sustain the action it was incumbent upon the equitable plain-

tiffs not only to offer evidence legally sufficient to prove the negligence of the defendants under the rule stated; but they were bound to offer evidence legally sufficient to show that the negligence charged resulted in the death of Vincent Kabat."

"Actionable negligence is an act, or omission of duty which is the proximate cause of an injury. No matter to what extent, or in what respect a party may be negligent, such negligence does not constitute a cause of action, unless the negligence charged and the injuries sued for bear the relation of cause and effect."

In the more recent case of *State* v. *W. B. & A. Elec. Rd. Co.,* 130 Md. 612, JUDGE BURKE, speaking for this Court, said: "It is admitted that the rule is difficult of application. But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."

If the facts and circumstances, above related, were the only facts and circumstances upon which the plaintiff relied, it is clear that the alleged negligence of the defendant in permitting the table to remain upon the sidewalk *in violation of the ordinance* was not the proximate cause of the injuries sustained by the plaintiff, and this was so held by the Court below, for not until the declaration was so amended as to involve the alleged faulty construction and contour of the street and curb at the place were the automobile was turned, did the Court hold that the facts alleged constituted a cause of action.

We are, therefore, to inquire whether the facts offered in evidence under the aforesaid amendment to the declaration, considered in connection with the facts and circumstances already related, show that the negligence with which the defendant was charged was the proximate cause of the injuries suffered by the plaintiff.

Kreitz, the driver of the automobile which passed over the curb upon the sidewalk, inflicting the injuries complained of, was running his machine down Potomac street on its westward side, and upon reaching Antietam street, attempted to turn in Potomac street without backing his automobile, but as he says there were three young ladies standing in the street near the southeast corner of Antietam and Potomac streets, about two feet from the curb, and because of their presence there, he was prevented from making the turn without backing his machine. At this time the front part of his car was within three or four feet of the young ladies and was east of the east rail of the track, the after part of it being over the rails. It was then that he started to back his car, and in doing so he "threw out the clutch and put it in reverse gear," giving the car a backward motion, and it backed over the curb upon the sidewalk. He did not look back to see where his car was going, although he says he used his foot brake before reaching the curb, and feeling the car go over the curb, he applied the emergency brake.

Stewart Miller, assistant engineer of the City of Hagerstown, when called to the stand by the plaintiff, testified that South Potomac street, at the point where the accident happened, is approximately sixty feet in width from houseline to houseline, and is thirty-seven and seven-tenths feet in width between the curbs. That it is paved between the curb with vitrified brick. That there was a trolley track about the center of Potomac street; the western rail of which was sixteen feet and nine inches from the western curb of the street, and that the elevation of the street at said rail was eleven inches higher than the bottom of the gutter at the curb on the west side of the street. The curb, which was of limestone six inches thick, arose to an elevation of about six inches above the bottom of the gutter. Its outer edge was somewhat worn. He, however, upon cross-examination, testified as follows:

"1Q. Is there anything, in your opinion as an engineer, wrong with it, with reference to a reasonable construction of

the street? 1A. No, sir.  2Q. (By Court): Is that a reasonable and proper construction there at that corner of that street, in your judgment? 2A. Yes, sir.  3Q. In which direction does the water drain on Potomac street?  3A. It drains north."

That on the west side of Potomac street the water flows north to the south side of Antietam street and then west down the south side of said last named street.

This testimony of the assistant engineer, witness for the plaintiff, was supported by Ferguson, the engineer of the city, a witness of the defendants, who had been engineer of the city for a little over three years, and like the assistant engineer, was not in the service of the city when the street was paved, some seventeen or eighteen years before the happening of the accident.

He, when asked: 1Q. In your opinion as city engineer and as a street and road builder and civil engineer, will you please tell the Court and jury whether that is a proper and reasonable construction of a street of that kind at that place where the accident happened? 1A. It is. 2Q. Why? 2A. It is a very usual construction in the building of city streets.

The Court then asked him: 1Q. Is there anything unusual in having the street or driveway part of the street higher than the pavement sidewalk? 1A. No, sir; not at street intersections. I should say, with the exception of streets that are well provided with sub-surface drainage, it is the rule rather than the exception. 2Q. What kind of drainage do you have in Hagerstown? 2A. At this point there is only surface drainage.

He also testified there had been no change in the streets since he had been city engineer. It had neither been lowered or raised in that time. It had remained the same.

Other witnesses, called by the defendant, who had frequently turned their cars upon the street at that point by backing them, testified that they never had any difficulty in avoiding going over the curb as was done in this case.

The condition of the street was practically the same at the time of the happening of the accident as it was when paved more than seventeen years before said time.

The grade or contour of the street was the same when the accident occurred as it was when first paved, and the evidence fails to disclose during the whole period from the time said street was paved to the happening of this accident, that any automobile had ever backed over the curb and upon the sidewalk, in attempting to turn in the street.

In our opinion there is nothing in these facts and circumstances which tend to show that the accident was the natural and probable consequence of the alleged negligence of the defendants, and that the act of Kreitz in backing the car over the curb and upon the sidewalk, resulting in the injuries suffered by the plaintiff, ought to have been foreseen by the defendants, in the light of such facts and circumstances. Therefore, as this Court said in *County Commissioners of Anne Arundel County* v. *Collison,* 122 Md. 95, "Unless the testimony tended to show that the negligence relied upon was the proximate cause of the accident, there was nothing upon which a jury could predicate a verdict for the party complaining, and the Court should have declared that as a matter of law, and directed the jury so to find."

We must, therefore, hold that the Court erred in its refusal to grant the defendant's fourth prayer asking that a verdict be directed for the defendants because of a want of evidence legally sufficient tending to show that the alleged negligence of the defendants was the proximate cause of the accident. The judgment of the Court will therefore be reversed.

> *Judgment reversed without a new trial, with costs to the appellant.*