# WALTER R. WILSON

*vs.*

# SARAH T. YATES.

*Negligence—Personal Injury—Proximate Cause.*

That defendant, plaintiff's landlord, in attempting to repair a pump in the kitchen, negligently caused water to collect upon the floor, *held* not to be the proximate cause of the injury sustained by plaintiff in slipping the next day upon ice formed by the freezing of the water, the injury being in fact caused by nature's intervention in freezing the water, and by the water and the ice being permitted to remain on the floor.     pp. 60-61

*Decided June 18th, 1920.*

Appeal from the Circuit Court for Anne Arundel County (Moss, J.).

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, and ADKINS, JJ.

*T. Howard Duckett* and *William Stanley,* with whom was *Marion Duckett* on the brief, for the appellant.

*Edward H. Burke* and *N. Charles Burke,* with whom were *Robert W. Wells, James W. Owens, Jerry L. Smith* and *Alan Bowie* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the court.

The appeal in this case is from a judgment recovered by the appellee, Sarah T. Yates, against Walter R. Wilson, in an action brought to recover for personal injuries sustained by her, resulting from the alleged negligence of the appellant.

The declaration in substance states that the defendant wilfully and negligently assuming the right to enter the dwelling house in which the plaintiff and her husband resided, did, on the 31st day of December, 1917, negligently and carelessly enter the same and did negligently and carelessly interfere with the plumbing, pump and water fixtures in the kitchen and basement by turning on the water which ran "over the kitchen floor," and negligently went away leaving the water running; that the weather being cold, the water froze, forming a coat of ice over said kitchen floor, and the plaintiff in the performance of her household duties was compelled to pass over said kitchen floor and in walking and passing over it, exercising ordinary care and caution, in so doing, slipped upon the ice and fell to the floor, thereby sustaining serious and permanent injuries, etc.

At the conclusion of all the evidence, the plaintiff's and defendant's, two prayers were offered by the plaintiff and five by the defendant. The first prayer of the plaintiff was rejected and the second, on damages, was granted. All of the defendant's prayers were rejected. Among the prayers offered by the defendant was one (the first) that asked the court to withdraw the case from the consideration of the jury because of a want of legally sufficient evidence to entitle the plaintiff to recover.

This prayer presents the question whether there is found in the record any evidence legally sufficient to show or tend to show any legal connection between the negligence alleged against the defendant and the injury sustained by the plaintiff. Or stated in another way, is there found in the record any evidence legally sufficient to show there existed the relation of cause and effect between the alleged negligence of defendant and the injuries sustained by the plaintiff? *State* v. *W. B. & A. Elec. Railroad Company,* 130 Md. 603. The answer to this question must be found in the facts of the case as disclosed by the record.

The plaintiff and her husband had at one time agreed to purchase from the defendant the house and lot of land where they lived at the time of the injury complained of, but because of their default in meeting the payments upon the purchase money therefor, they, by the provisions of the agreement, had become the defendant's tenants of said property.

The water used by the appellee was supplied from a well in the yard and was pumped therefrom to a tank in the attic by means of a pump in the kitchen. The water in the tank flowed by the force of gravity to the different parts of the house, including the bathroom and kitchen.

This pump, it seems, got out of order and at the request of the appellee, the appellant, a real estate dealer, with one Anderson, a plumber employed by him, made an examination of the pump and found that the water in the pipes had frozen. Warm water was obtained from the appellee, or from Mrs. Boyd, a woman who at the time was living with her, and an attempt was made to thaw the water in the pipes. They succeeded in thawing it in the pipes located in the building, but were unable to thaw it in the pipes on the outside of the building that extended to the well.

The plaintiff testified that the defendant, on the 31st day of December, 1917, about 9 o'clock in the morning, examined the pump, took it apart and left about 12 o'clock, saying it needed a washer and that he was going home to get one. "The water on the kitchen floor came from the pump, * * * he worked the pump to see if it worked and water gushed out on the floor. That after the defendant left, it was impossible to use the pump, he said not to use it, could not tell how much water went on the kitchen floor, did not measure it, * * * the water did not go over but one-half of the kitchen floor; * * * Mrs. Boyd cracked it (the ice) with a broomhandle after she fell; she swept the water out, but not behind the range where the floor was low, only in front of the pump; the water ran back of the range, in front of the range and in front of the door; she swept out in front

of the door but thought it was useless to clean it all up as she expected defendant back; she only cleaned by the pump; she got supper that night, she and Mrs. Boyd had strips of carpet in front of the stove; * * * an ordinary strip four or five feet long; Mrs. Boyd cooked supper." She further testified that she was getting dinner when the accident occurred, about 11 o'clock in the morning of the following day. She had been in the kitchen before, about 8 o'clock, helping to get breakfast. Mrs. Boyd about 7.30 o'clock had made a fire in the kitchen and "that she was in and out of the kitchen all along between 8 and 11 o'clock; that she and Mrs. Boyd did not spend much of their time there, it was frozen there; that there was no fire in the furnace, * * * the kitchen the day before the first of January, was * * * flooded with water all over, it did not freeze until night; that she cooked meals on December the thirty-first; that the kitchen was flooded between breakfast and dinner," and water was running on the floor when the defendant left the premises saying he would be back in fifteen minutes.

Mrs. Boyd, who was making her home with the plaintiff at the time of the accident, testified that about 5.30 o'clock on December 31st water was all over the floor, "she swept it out and the more she swept the more it came back from the pump, * * * left water on the floor when she went to bed; she got breakfast; Mrs. Yates was not able; put the carpet on the floor that night; it was frozen to the floor in the morning; she made a fire in the cooking stove, an ordinary size stove, but did not heat up extra well; made no effort to clean up ice until after Mrs. Yates fell; anyone could see the ice in coming into the kitchen."

William Yates, husband of the plaintiff, testified that "the pump would not work before he (the appellant) came nor since; he did something to it, the flow is worse; the well is out in the yard and the pipe runs up through the cellar through this pump to tank in the attic, and house supplied by pipes running down from the tank; when you pump the

pump instead of going to the attic it would go to the kitchen; defendant removed it; that was December 31st; witness observed it after he left; it was flowing freely and on the first of January just a little drop."

He upon cross-examination said: "The pump sets on the kitchen floor, sink near it, pump not directly in sink; defendant pulled the whole thing to pieces; had the handle out; he pumped gallons and gallons of water on the kitchen floor; at the time he left the water was flowing just a little bit; witness tried to stop it; wrapped it up; did not know anything about it at all; did not know whether it froze that night; water was dripping out next morning."

The defendant testified that when he and Anderson reached the house, they "took the head off the pump; it was frozen up * * * and I got Mrs. Boyd to warm water and thawed the pump and pipes in the cellar," but he could do nothing with the pipes outside of the cellar; there was at the time no water in the tank and none could be gotten from the boiler. The pump was in good condition, "but it did not bring water as there was no water it could get. * * * They put the head back on the pump and no further attempt was made to use it," and no water was pumped out except the water that was heated on the stove and put in there; "there was not more than three cupfuls of water spilled on the floor; the lady there said she would wipe it up."

Anderson, the plumber, testified "he went to the Yates house with Mr. Wilson, took the pump apart and saw nothing the matter with the washer, it looked all right, put it back and it would not pump, filled it and primed it and of course spilled some water on the floor and then went to the cellar and found the pipe frozen so he could not thaw it out; put the pump together and left the pipe in the cellar open; spilled some water on the floor in priming it; neither he nor the defendant pumped any water out of the pump because it was frozen at the other end; does not think there was any water leaking out of the pump when they left * * *

someone went next door and got the water that was used in priming the pump; used about a quart, not more; tried to thaw out the pipe downstairs by putting hot water in it; the water was furnished from upstairs."

In the recent case of *M. & C. C. of Hagerstown* v. *Foltz,* 133 Md. 56, we there said: "It is a maxim that the law looks at the proximate and not at the remote cause of an injury. Out of the application of this maxim grows the liability or non-liability of a defendant charged with the infliction of an injury by his negligence. Unless the alleged negligence of the defendant was the proximate cause of the injury of which the plaintiff complains, there can be no recovery. For consequences of which his act or omission was only a mere condition or remote cause, the defendant is not liable. The constantly recurring problem is: did the defendant's act or omission proximately cause the plaintiff's injury, and was such act or omission a want of ordinary care, or was the act or omission of the defendant only a remote cause or mere condition of the injury? No ultimate test of such character has yet been formulated. It is by analysis and synthesis rather than by definition that the distinction between proximate and remote cause must be made. 16 *Am. & Eng. Ency. of Law* 428."

In *City Pass. Ry. Co.* v. *Kemp,* 61 Md. 81, this Court, speaking through Chief Judge Alvey, said: "The general rule is stated in *Addison on Torts,* 5, with as much clearness and precision as will be found in any other text writer, and he states the rule to be 'that whoever does an illegal act is answerable for all the consequences that ensue in the ordinary and natural course of events, though those consequences be immediately and directly brought about by the intervening agency of others, provided the intervening agents were *set in motion* by the primary wrongdoer, or provided their acts causing the damage were the necessary or legal and natural consequence of the original wrongful act.' "

JUDGE BURKE, speaking for this Court in *State v. W., B. & A. Elec. Rd. Co., supra,* quoting from *Milwaukee & St. Paul Rwy. Co. v. Kellogg,* 94 U. S. 469, said: "The question always is: Was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted that the rule is difficult of application. But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances. * * * The inquiry must, therefore, always be whether there was any intermediate cause disconnected from the primary fault, and self-operating, which produced the injury."

When the inquiry is made in this case, there is found a self-operating, intermediate cause, not connected with the alleged negligent acts of the defendant, that caused the injury sustained by the plaintiff. Assuming that the appellant was negligent in causing the water to flow upon the floor, in attempting to repair the pump which he was asked by the plaintiff to repair, and assuming that he was negligent in leaving the water still flowing upon the floor, a fact which is denied by him, these acts of the defendant were not the proximate cause of the injury—or otherwise expressed—the injury was not the natural and probable consequence of said alleged negligence of the defendant, but was the consequence of other intervening causes not connected with the ·alleged negligent act of the defendant.

The water that was left upon the floor, which the defendant might well have thought would be removed, especially as he was told it would be, was permitted to remain upon the

floor for hours when it should have been removed, and some steps taken to prevent the water that was said to be flowing from the pump, from running on the floor. The water being permitted to remain upon the floor, nature intervened and it was transformed into ice, a happening that the defendant had no reason to contemplate; and although the ice could be easily seen by one entering the room, and was seen by both the plaintiff and her help in the kitchen, it too was permitted to remain in that dangerous condition upon the floor, without any effort to remove it, until the accident occurred.

The connection between the alleged negligent act of the defendant and the injury was broken by the said intervening, intermediate causes that produced the injury, over which the defendant had no control.

There is in this case no evidence tending to show that the negligence relied upon was the proximate cause of the injury sustained by the plaintiff, and consequently there was nothing upon which the jury could predicate a verdict for the party complaining, and the court should have so declared by granting said prayer withdrawing the case from the jury. *County Commissioners of Anne Arundel County* v. *Collison,* 122 Md. 95.

It becomes unnecessary because of the view we take of this case to consider and pass upon the court's rulings upon the other prayers, or upon its action upon the demurrer to the declaration.

It follows from what we have said that the judgment of the court below must be reversed.

> *Judgment reversed without a new trial, with*
> *costs to the appellant.*