## UNITED RAILWAYS AND ELECTRIC COMPANY OF BALTIMORE *v.* EVERETT R. PERKINS.

*Negligence—Proximate Cause—Injury by Street Car—Vehicles Racing—Contributory Negligence.*

While impossible statements in the testimony may be disregarded, yet so far as the evidence affords any tendency to sustain the plaintiff's action, it cannot be questioned on appeal.

p. 107

The existence of negligence at the time and place of an injury does not give a right of action unless the injury was caused by it.

p. 110

Where one waiting for a street car, which failed to stop, was struck by an automobile approaching beside the car, and so thrown in front of the wheels of the car, which injured him, the action of the automobile in striking him, and not the street car's failure to stop, was the proximate cause of the injury.

p. 110

Where a street car and an automobile were moving side by side, and the automobile, striking a man in the roadway, threw him in front of the wheels of the street car, by which he was injured, the motorman was not negligent in having failed to stop the car so as to avoid such a contingency, he having no opportunity, before the accident, to perceive that the automobile would continue on its course, without either stopping or going around the man ahead of it.                    pp. 110, 111

The failure of the motorman of a street car to stop the car for one waiting for it in the roadway cannot be regarded as having induced the owner of an automobile to drive on without giving any heed to the person so waiting, ahead of him.

pp. 111, 112

Whoever does an illegal act is answerable for all consequences ensuing in the ordinary and natural course of events, though these be immediately and directly brought about by the intervention of others, provided the intervening agents were set in motion by the primary wrongdoer, or provided their acts caus-

ing the damage were the necessary or legal and natural consequence of the original wrongful act.                          p. 111

Evidence that a street car and an automobile were racing or keeping up with one another was sufficient to go to the jury on an issue whether the negligence of the motorman of the street car was a proximate contributing cause of the injury to one struck by the automobile.                              p. 112

One standing in the street, in order to board an approaching street car, who was struck by an automobile proceeding side by side with the car, was not guilty of contributory negligence because he held his position in the expectation that the automobile would not run over him.                              p. 113

That defendant's prayer that plaintiff could not recover for defendant's negligence, unless the injury "was caused" by such negligence, was modified so as to read that plaintiff could not recover unless the injury "was contributed to" by such negligence, was immaterial.                              p. 113

The refusal of defendant's prayer which sought to confine the jury to "the direct and proximate cause" of the accident, *held* not reversible error, when the prayer, while stating the legal principle correctly, did so in words that could hardly serve to give any instruction to the jury on the difficult question of proximate cause involved in the prayer.                    p. 114

*Decided January 20th, 1927.*

Appeal from the Baltimore City Court (DAWKINS, J.).

Action by Everett R. Perkins against the United Railways and Electric Company of Baltimore and Charles Harrington. From a judgment for plaintiff, the first named defendant appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*J. Pembroke Thom* and *Philip S. Ball,* for the appellant.

*Horton S. Smith* and *Allan Cleaveland,* for the appellee.

Bond, C. J., delivered the opinion of the Court.

This appeal is from a judgment against the railways company in favor of one who alleged and testified that while attempting to board an approaching street car he was struck by an automobile, which he did not see, approaching beside the car, and thrown toward the car, so that his foot was injured under the wheels. The testimony in the case is conflicting; the motorman, the conductor, and a passenger on the street car testified to complete ignorance of the plaintiff's presence in the street as they passed the place designated, and ignorance of the automobile mentioned, or of any accident; and said that the car had proceeded along by the place at its ordinary speed, and without any incident out of the ordinary. And the evidence for the plaintiff is attacked as incredible in some particulars. But while impossible statements might be disregarded, yet, so far as the evidence affords any tendency to sustain the plaintiff's action, it is, of course, not to be questioned on appeal, and its credibility and weight should have been reviewed rather on the motion for a new trial.

Exceptions were taken to bring up for review in this court several rulings on evidence, but we understand that none of these are now pressed. They were not argued.

Confining the review to the questions presented on the prayers for instructions, then, we have this evidence for the plaintiff to consider: The accident occurred in the center of North Avenue, one of the widest streets in Baltimore, at Ashburton Street, at 10:40 P. M., on the night of February 24th, 1924. There had been a light fall of snow, but this had stopped, leaving the ground lightly covered. The neighborhood was well lighted, so well that the plaintiff thought a man standing in the street waiting for a car could see two blocks either way, and presumably be seen for that distance; the driver of a taxicab coming a block or more behind the street car testified that from the distance of a block or more he did see the plaintiff as the latter advanced to board the street car. When the car had approached at the distance of half a block from the street intersection, the plaintiff left the

sidewalk and walked out, signalled the car, and as it reached him placed himself in a position to enter it. He did not see any automobile, or hear any automobile horn. Yet there was an automobile proceeding side by side with the street car, at the front end of the car where the motorman could see it, and the two moving vehicles had been proceeding thus, side by side, for a block or more. Neither the car nor the automobile stopped, and the automobile struck the plaintiff and threw him toward the car. He was bruised only slightly, the substantial injury having been that to the foot. The driver of the automobile, one Harrington, was sued jointly with the railways company, but he made no defense, and did not testify, and there is no appeal by him. According to this evidence, his running into the waiting passenger was negligence that can hardly be distinguished from a wilful act, unless upon the supposition that he had lost his senses for the time being.

There was testimony of excessive speed on the part of both the street car and the automobile. The plaintiff himself merely inferred from the accident that the car must have been going fast. In Harrington's automobile there were, besides himself, three young men who had spent the evening at a dance hall where Harrington also had been, and who, after having missed this street car, had been invited by Harrington to ride with him to Madison Avenue, to catch a car there; and one of these three young men, Haines, who sat on the rear seat of the automobile, was produced as a witness on behalf of the plaintiff, and said both the automobile and the street car were racing, hitting up a pretty good speed. It does appear questionable, as the appellant argues, whether Haines meant that the motorman and the driver of the automobile were engaged in a contest of speed at the time. When counsel asked him, "You say they were racing?" he answered, "Hitting it up at a pretty good speed, you know; I cannot judge the speed." And the testimony in support of any inference that there was a contest by both sides is found almost altogether in repetitions and explanations of counsel. But the witness added, later in his testimony, that a place

further back on the street "is where we started to race, to keep up with each other." And in answer to further questions, he said that the motorman glanced out every once in a while at the automobile, going down hill. The witness was not cross-examined on his use of the word "racing," and in this respect, as in some other respects, the testimony did not develop the facts as fully as might now be desired, but we think that, taking it as it is, the plaintiff was entitled to have this testimony submitted to the jury as possibly some evidence to the effect that as the car and the automobile were coming along the block approaching Ashburton Street, they were going at a high speed in an effort on the part of the motorman and on the part of the driver of the automobile, both, to keep abreast of each other, possibly to pass each other. Haines said, further, that the automobile, after having struck the plaintiff, passed across the intersecting street and stopped, that if necessary it could have stopped in the middle of the street, and would have stopped before if the car had stopped. As Haines was not driving, and said he seldom rode in an automobile, and was not a judge of speed, his statements that this automobile could or would have stopped at the one place or the other are criticized as unfounded conjectures, but they were not objected to when made, and stricken out. Further, on the matter of the speed of the moving vehicles, the taxicab driver, coming behind at the distance of a block or more, estimated that their speed at the time of the accident was thirty-five or forty miles an hour.

A rule of the company requiring that a car be in control and be brought to a stop to take on passengers signalling to it, and a municipal ordinance limiting the speed of street cars to fifteen miles an hour at crossings in the thickly congested portions of the city, were received in evidence, against objections that they were irrelevant.

Obviously, the foremost question on these facts is whether the injury can be said to have been caused by any negligence of which the motorman may have been guilty. And the appellant, on this ground, resisted the granting of prayers of the plaintiff for instructions of the jury, and requested that a

verdict in its favor be directed. The mere existence of negligence at the time and place of an injury does not give a right of action. The injury must have been caused by it. *Kelly v. Huber Baking Co.,* 145 Md. 321, 335; *Gittings v. Schenuit,* 122 Md. 282, 285; *Hopper, McGaw Co. v. Kelly,* 145 Md. 161, 169; *Mayor & Council of Hagerstown v. Foltz,* 133 Md. 52, 56; *Orton v. Penna. R. R. Co.,* 7 Fed. (2nd) 36.

Of course, mere rapid movement of the car, and its failing to stop, could not, standing alone, be said to have brought the plaintiff's foot under the wheels. It is true that, if the car had been brought to a stop, as it should have been to admit the plaintiff as a passenger, the wheels could not have caused the injury when the plaintiff was thrown towards them; but the only wrong in failing to stop was in depriving the plaintiff of his right to ride. Passing him would, in itself, be innocent of any other consequence, and it was only by the intervention of the outside agency, turning the movement of the car to a wholly unrelated and highly improbable consequence, that the foot of the plaintiff was run over. The intervention of the action of the automobile driver, not the motorman's failure to stop, must be taken as the legal or proximate cause of injury. A similar conclusion has been reached in a case in which a car failed to stop for a hurrying crowd of passengers trying to board it, and one of them fell and had his hand caught under the wheels (*South Chicago City Ry. Co. v. Dufresne,* 200 Ill. 456); when, on the failure of a steam railroad train to stop, a passenger waiting to alight was thrown from the platform (*Boston & M. R. R. Co. v. Miller,* 203 Fed. 968); and in a case in which one who was passed by a street car he had intended to board was negligently struck and injured by the carriage of a fire chief driving by to a fire (*Stephens v. Oklahoma City R. Co.,* 28 Okla. 340). And see *State v. Wash. B. & A. Elec. R. Co.,* 130 Md. 603, 612; *Mayor and Council of Hagerstown v. Foltz, supra; Wilson v. Yates,* 137 Md. 54, 59. Direct proximate causation in negligence of the motorman is founded by the appellee, however, upon another

theory. It is argued that, when the driver of one moving vehicle sees another moving toward a man in the roadway and threatening to strike him and throw him from his feet, the first driver is negligent, and his negligence is a joint cause of the injury, if he brings his moving vehicle up so that the helpless man is hurt by it. Negligence on that theory, however, presupposes an opportunity to see the danger before coming to the spot, and then to avoid it; and here the car and the automobile were side by side, arriving at the spot simultaneously, with each driver required to watch the roadway on his course ahead; and there appears to have been no opportunity before the accident for perceiving that the automobile would continue on its course, without either stopping or going around the man ahead of it. Failure of the motorman to keep aloof from the accident cannot, therefore, be regarded as negligence causing the injury.

Any causal connection there might have been between the operation of the car and the injury to the foot must, it seems, be found in some relation of cause and effect between that operation and the negligent driving of the automobile which threw the plaintiff toward the wheels.

"Whoever does an illegal act is answerable for all the consequences that ensue in the ordinary and natural course of events, though those consequences be immediately and directly brought about by the intervention of others, provided the intervening agents were set in motion by the primary wrongdoer, or provided their acts causing the damage were the necessary or legal and natural consequence of the original wrongful act." *Addison on Torts,* adopted as a correct statement of the principle in *City Pass. Ry. Co. v. Kemp,* 61 Md. 74; *State v. Wash. B. & A. Elec. R. Co.,* 130 Md. 603, 612. And see *Mayor and Council of Hagerstown v. Foltz,* and *Wilson v. Yates, supra;* and various special studies on the subject: *Bohlen, Studies in the Law of Torts,* 1; *Smith,* 35 Harvard Law Rev., 103; *Terry,* 28 Harvard Law Rev., 10; *Beale,* 35 Harvard Law Rev. 633; and *Burke,* 15 Cal. Law Rev. 1. One such relation, argued

# 112 UNITED RWYS. & ELEC. CO. v. PERKINS.

or suggested, is based on the supposition that, by failing to stop the car for the passenger, the motorman induced the automobile driver to drive on without giving any heed to the man standing in the street ahead of him; but we see no such relation in those facts. The motorman's operation of the car did not control the action of the automobile driver, and certainly did not cause him to continue on, holding his course with a waiting passenger standing out clearly before him. It could not reasonably be supposed that the automobile driver disregarded the roadway ahead of him altogether and took the car, in its tracks, for his sole guide; if he did, then he was the sole author of that action and its consequences; it was an unnatural one, which would not have been anticipated by any prudent motorman as possible.

It is the opinion of this Court, however, that the jury were at liberty to find causation of the accident by the motorman in the testimony that he and the automobile driver were racing, or keeping up with each other.

In the trial of *Reg. v. Swindall* (1846), 2 Car. & Kir. 230, 233, a prosecution for manslaughter, Pollock, C B., instructed the jury that "when two persons are driving together, encouraging each other to drive at a dangerous pace, then, whether the injury is done by the one driving the first or the second carriage, I am of opinion that in point of law the other shares the guilt." And a like decision was rendered in *Potter v. Moran*, 61 Mich. 60, in which it was said that "two persons racing make a plain and serious danger to every other person driving along the said highway, and one which it is often impossible to avoid. It is in itself an act of such negligence as to make the racing parties responsible for a collison caused by it." Those were cases of racing horses in highways, but it seems to us that a jury might reasonably conclude that the same danger to other persons using the highway would exist, in some degree, at least, when an automobile and an electric car were racing. On this theory of negligence we think the case was properly referred to the decision of the jury.

The question of contributory negligence on the plaintiff's part is next to be considered. The defendant asked that a verdict in its favor be directed because of such contributory negligence, and, in the alternative, that the jury be instructed to render their verdict for the defendant if they should find the plaintiff to have been guilty of contributory negligence. The court refused both prayers, and we think did so rightly, because the plaintiff was obviously justified in holding his position in the expectation that the automobile would not run over him. He could not be required to anticipate such an extraordinary action on the part of the automobile driver, and there is no evidence, and no reason to suppose, that he had any opportunity to avoid the automobile after it became apparent to him that it might run over him.

The appellant urges an exception to the refusal and modification of his second prayer for instructions. As presented it contained an instruction that the plaintiff could not recover for negligence on the part of the railways company unless the injury *was caused* by such negligence, and the trial court refused the prayer in that form and instructed the jury instead, by modifying the prayer, that there could be no recovery unless the injury *was contributed to* by such negligence. Perhaps in neither form would the jury be fully and clearly instructed on the distinction between negligence which would and negligence which would not be legal, proximate cause of this injury. The Court does not consider the mere difference between "was caused" and "was contributed to" by negligence, to have been material. The phrase "contributed to" is commonly used to express legal or proximate cause, especially in connection with negligence on the part of a plaintiff himself.

The defendant's third prayer, for an instruction that there could be no recovery unless the motorman had the last clear chance to avoid the danger caused by the negligent driving of the automobile, was properly refused because the case does not present any such situation. Recovery is possible only on

the ground of concurring original negligence on the motorman's part, as has been seen.

The defendant's fourth prayer sought to confine the jury to "the direct and proximate cause" of the accident. It states the legal principle correctly, but in words that could hardly serve to give any instruction to the jury on the difficult question before them, and for that reason we should not hold its refusal to have been reversible error.

*Judgment affirmed, with costs to the appellee.*