CONDA G. LASHLEY ET AL. *v.* HAYDEN C. DAWSON.
[No. 3, April Term, 1932.]

*Decided May 12th, 1932.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Charles Z. Heskett,* with whom was *George R. Hughes* on the brief, for the appellants.

*F. Brooke Whiting,* with whom was *Thomas Lohr Richards* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

This is an action to recover damages for personal injuries suffered by the appellee as a result of a collision between an automobile operated by one Robert MacDonald and a motor bus owned and operated by the appellants.

The accident occurred at or about midnight on November 12th, 1930, on the McMullen Highway, which runs in a general southwesterly direction from Cumberland, Maryland, through the villages of Cresaptown and Rawlings to Keyser, West Virginia, and at the time of the accident the appellants operated bus lines for hire between those points.

Hayden C. Dawson, the appellee, was employed at a factory of the Celanese Corporation of America, located about five miles southwest of Cumberland on the McMullen Highway, lived on the east side of the same road a few miles southwest of Cresaptown, and in going to and returning from work he was accustomed to use appellant's busses.

On the day of the accident he completed his day's work at eleven o'clock at midnight and went to the usual place to take a bus to his home, but found that the bus which he expected to take had gone. He did find, however, at that place one of appellants' busses operated on a route terminating at Cresaptown, and he asked the driver of that bus how he was to get home. After some hesitation the driver told him to "climb on" and he would take him home. Dawson accepted the invitation, gave the driver a ticket for his transportation, and the bus proceeded from the factory to his home, which is connected with the McMullen Highway by a lane. The paved part of the road at that point is about sixteen feet wide, the bus about twenty-eight feet and nine inches long, and the lane narrow. Because of that condition, on the way out, Dawson testified, he warned the driver that it was dangerous to attempt to turn at his lane, but the driver, nevertheless, did turn into his lane and backed out in order to turn back towards Cumberland, and in backing ran into a bank on the opposite side of the road. He and Dawson then got out of the bus to see whether it had been damaged. It had not, and the driver re-entered the bus and turned off the interior or dome lights so that he could "see where he was backing," but left burning the headlights, the rear lights, and the marker lights. He then resumed his efforts to turn the bus, and, while it was across the road, a car appeared coming from the direction of Cumberland, and Dawson, who was standing in the highway, lighted a match to warn the approaching driver of danger, and then left the traveled part of the road and stood in a ditch on the extreme east side of it. As the on-coming car approached the bus, it swerved to the left, crossed the traveled part of the road, struck Dawson, and crashed into the bus. As a result of the collision Dawson was injured, and, on the 31st of the following March, he brought this action against the appellants and MacDonald in the Circuit Court for Allegany County to recover for his injuries. MacDonald was never summoned, and a judgment of *non pros.* entered as to him, but the action proceeded against appellants. At the trial of the case the

verdict and judgment were for the appellee, and from that judgment this appeal was taken.

The appellee's theory of the case is that at the time of the accident appellants' bus completely obstructed traffic on the highway at the point where the accident occurred; that that was an obvious and necessary consequence of any attempt to turn it at that point; that it was dark at the time, and that it thereupon became and was the duty of the bus driver to warn approaching traffic of the danger which the bus in that situation presented; that, because of the angle of the bus to the road, the usual road lights with which it was equipped did not suffice to give such a warning, but that the dome lights would have done so; that, when the driver turned those lights off, ordinary care and prudence required him to warn approaching traffic of the danger by sounding his horn on the bus or by displaying other lights which would have been visible to such traffic; and that his failure to take any such precautions constituted negligence which was the direct and proximate cause of the accident.

Appellants, on the other hand, contend that, since the usual road lights on the bus were all burning at the time of the accident, they had complied with all statutory requirements and were not guilty of primary negligence, but that, if they were negligent, their negligence was not the proximate cause of the accident, and that in any event appellee voluntarily placed himself in a position of obvious danger and was therefore as a matter of law guilty of negligence directly contributing to the injuries of which he complains.

The record submits its eight exceptions, seven of which relate to rulings on evidence and one to the court's rulings on the prayers. The rulings on the evidence were abandoned in this court, so that there remains for consideration only the action of the trial court on the prayers.

If the jury were entitled to have the case at all, the two prayers granted for the plaintiff were unobjectionable and require no discussion, while all of the defendants' prayers, except those which went to a directed verdict, were granted. The issues in the case raised by those prayers are (1) whether

the evidence was legally sufficient to show that the defendants were guilty of primary negligence which was the proximate cause of the injury of which appellee complains, and (2) whether upon the whole evidence the appellee was as a matter of law guilty of negligence directly contributing to such injury.

Appellants' first and third prayers tender the issues of primary negligence and proximate cause, while by their second prayer they asked to have the jury instructed that the plaintiff was guilty of contributory negligence as a matter of law, and for that reason not entitled to recover.

Because of the nature of those prayers, all conflicts in the evidence will be resolved in favor of the appellee, and the truth of all evidence, and such inferences as may naturally and legitimately be deduced therefrom which tend to support his right to recover, will be assumed. *Travelers' Insur. Co. v. Hermann,* 154 Md. 182, 140 A. 64; *Clough & Molloy v. Shilling,* 149 Md. 199, 131 A. 343; *Abuc Trading Corp. v. Jennings,* 151 Md. 398, 404, 135 A. 166; *Purdum v. Edwards,* 155 Md. 187, 141 A. 550.

On his own behalf, after testifying to the facts which have been stated, Dawson said that, when the dome lights were turned off, the bus "set across the road," and neither the headlights nor the rear lights could be seen from it, because they pointed away from the road, but that the dome lights, when turned on, lit up the interior of the bus so that it was distinctly visible to persons on the road; that between the front of the bus and a fence post on the east side of the road there was a space of about three feet clear; that when the driver re-entered the bus he (Dawson) remained in the roadway on the left or Cumberland side of the bus, and, when he saw the MacDonald car approaching "with the bus standing there blocking the road," he feared an accident unless MacDonald stopped his car, but it did not "look as if he was going to stop," and he thought "the MacDonald car was making about the limit as it came along, that to warn him and prevent an accident, he, Dawson, lighted a match and waved it, and then "stopped over off the road," into a

ditch on the east or left side facing Keyser; that, as the MacDonald car got closer to the bus, it swerved suddenly to the left and struck him.

Alfred S. Somerfield, a neighbor, happened to be returning to his home on the same road a few hundred yards north of Dawson's lane, from Keyser, West Virginia, when he saw the bus across the road. He testified that, when he first saw it, the dome lights in the bus were burning and that he had no difficulty in seeing it, and that the driver apparently saw him approach and waited for him to pass; that at that time the bus was "pulled up in the lane," leaving a clear space through which witness passed; that his lane was about 300 yards from Dawson's lane, and when he reached it he turned into it, put his car away, and was about to enter his house when he saw the MacDonald car approaching; that at that time the interior lights of the bus were not burning and it had backed out again towards the other side, that he thought there would be "trouble" and kept watching until the collision; that when the crash came he went to the scene and from what he saw it appeared as though the "car had tried to go between the post and the front of the bus," a clear space of three to five feet; that at that time the interior lights were out and he heard no warning signal given by the bus driver; that the road lights on the bus did not show "up the road or down the road," although they were visible to him when he was at his house about one hundred feet from the road; that when he arrived at the scene of the accident the front of the bus was four or five feet from the post and the rear of it projected six or seven feet beyond the macadam on the other side of the road, completely blocking the highway, except for the space of three to five feet in front between the front of the bus and the post.

It also appeared from his testimony that there were other places, a short distance south of Dawson's lane, where the bus could have been turned "more safely."

Somerfield's home was on the west side of the road about 300 feet north of Dawson's lane, which was on the opposite side of the road, and from where he stood at the corner of

his house he could see the lights of the bus and "hear the motor run," but the road was not lighted, and he could not see the body of the bus, but could only see the markers and the reflection from the front lights.

Kearney R. Judy, who arrived immediately after the collison, testified that appellants' bus "completely blocked the road," and that at that time the interior lights were burning and the bus distinctly visible. He also said that as he approached the bus he did not see the headlights, that it would have been impossible to have seen them.

J. W. McKee, the bus driver, describing the accident, said: "When I arrived at the lane, Mr. Dawson's destination, I drove the bus up in the lane and opened the door so he could get out. He got out and I backed back diagonally across the road, and in the meantime Mr. Dawson rushes to the east or left hand side of the bus and I got out and walked over to see how far I could go back without hitting the bank. In the meantime I saw a car coming from Keyser, and I pulled up in the lane far enough to let this car pass. I then proceeded to turn my bus on around, Mr. Dawson being in the road, and I noticed a car approaching from Cumberland. I pulled up as far as I could pull and waited for this car to come by. It seemed to be coming at a pretty rapid speed, and I noticed, when he got close to the bus, instead of going by as I expected, he swerved to the left, and in doing so he struck Mr. Dawson and knocked him down. Q. Where was Dawson standing when he was hit? A. When Mr. Dawson was hit he was standing still. He was jumping to get out of the road."

In connection with that statement on cross-examination, he gave this testimony: "Q. How far away was the MacDonald car when you first saw it approaching? A. It was about half way between the top of the hill and the bus. Q. What distance would that be? A. I would say about 300 feet. Q. You had plenty of time to turn on the dome lights to let him see there was something in the road? A. I had time to turn them on; yes. Q. Why didn't you turn them on? A. There was no reason to turn them on. Q. Why not?

A. Because they aren't to signal you are out on the road. They are merely intended to light the inside of the bus. * * * Q. But they make a big light so that you can see in through the windows that the whole thing is lighted up, can you not? A. Well, yes—you can see the reflection, I suppose. Q. Why didn't you sound your horn when you saw this car approaching? A. There is no reason to sound the horn when you are setting off the road and a car approaching. He wasn't coming out of a lane or anything that I needed to sound my horn. Q. You saw him approaching without any lights in your bus which is shown in the road, and you didn't give him any warning by sounding your horn? A. No, sir, I didn't sound the horn."

There was evidence which permitted the inference that the brakes on MacDonald's car may have been out of order, and also evidence contradicting the statements that the bus completely blocked the highway at the time of the accident, and that the interior lights were turned on immediately after the accident, and that the usual road lights of the bus were not visible to persons approaching the bus over the McMullen Highway, but, for reasons stated above, those conflicts are not material to the issues under consideration, and may be disregarded.

Briefly restated, and assuming the truth of all evidence tending to support the appellee's right to recover in the action, together with such inferences as may naturally and legitimately be deduced therefrom, the material facts involved in the three prayers under consideration are these: McKee, the driver of appellants' bus, attempted to turn it around at a point on the highway where it was reasonably apparent that such turning could not be effected without completely blocking the highway; that to make the turn he partly entered appellee's lane, and then backed out across the highway in such a position that the ordinary road lights on the bus pointed away from the road and were not visible to persons approaching the bus over the highway; that to facilitate his turning he switched off the interior lights, which would have been visible to such travelers, so that the bus presented an

unlighted obstruction extending entirely across the highway; while in that position he saw an automobile approaching in time to have warned the driver thereof, by sounding his horn or turning on the interior lights, of the position of the bus, while the automobile was still 300 feet distant from it, but he failed to give any such warning.

The driver of the automobile approaching at a "rapid speed" apparently failed to see the bus until it was too late to avoid a collision, and, when he did see it, swerved suddenly from his right to the extreme left of the road and struck Dawson, who was standing in the ditch on the left or east side of it, and struck the left front wheel and the left front bumper of the bus, which was from three to five feet from a post in Dawson's lane.

These facts are sufficient to support the hypothesis that the conduct of the bus driver in operating and managing the bus constituted primary negligence, and that such negligence was the direct and proximate cause of the accident which occasioned the injuries for which the appellee sought to recover in this action.

Public highways are established and maintained from the public funds for the use of all, and all persons having occasion to travel over them are entitled to assume that they are in reasonable repair and free from dangerous traps or obstructions of any kind, whether suffered or created by the agencies having them in charge (*Annapolis v. Stallings,* 125 Md. 349, 93 A. 974), or by travelers thereon. *Huddy on Automobiles,* sec. 383. The duty of keeping them safe for the lawful use of all persons who are themselves in the exercise of reasonable care rests primarily upon the state or the particular agency of the state having them in charge, but there is also a duty, no less imperative, imposed by law upon every traveler thereon to exercise at all times and under all circumstances reasonable care and prudence to avoid injury to others through his use of them, and the failure to exercise such care may constitute actionable negligence. Since "care" and "prudence" and "negligence" are all relative and not abstract terms, what will constitute due care in a given case

must necessarily depend upon the facts of that case. For, as was said in *Merrifield v. Hoffberger*, 147 Md. 141, 127 A. 500, 502, "the amount of care which the law requires one to exercise is commensurate with the consequences of his failure to do so," and "ordinary care" varies with the nature and character of the object to which it is applied (*Dickey v. Hochschild, Kohn & Co.*, 157 Md. 451, 146 A. 282; *Merrifield v. Hoffberger, supra*), just as negligence can only exist in connection with concrete facts upon which it is predicated. *Ballo., C. & A. R. Co. v. Turner,* 152 Md. 228, 136 A. 609. Conduct, therefore, which, at a time when the pace of traffic was measured by the speed of the saddle or the harness horse, might be entirely consistent with prudence, might today, when the swelling tide of traffic rolls over the main highways with the velocity of an express train, amount to criminal negligence, and common sense dictates that appellants' conduct be tested and weighed by actual present conditions, rather than by those which have long since disappeared.

The McMullen Highway, at the place where the accident occurred, is an improved road running through the open country, over which automobiles may, under the state law, be driven at a speed of forty miles per hour. It may be inferred, too, that the traffic over it was such that the driver, in the exercise of ordinary care, should have anticipated that, during the operation of turning the bus, automobiles might approach from either direction, and because of the location he should also have anticipated that they might approach at a high rate of speed. In the course of the turning operation he placed the bus squarely across the entire road, so that no vehicle could pass on either side of it, and because of its position the road lights with which it was equipped did not indicate its position to persons on the highway. The dome or interior lights when burning did indicate its position, but when they were turned off the bus formed a complete and at most a dimly visible barrier to all traffic from either direction. Assuming, without so deciding, that the attempt to turn the bus at that point was not in itself negligence, the conclusion is inevitable that, when the driver

permitted it to remain across the road with the interior lights turned off, it was his instant and peremptory duty to take some reasonably adequate measures to protect traffic over the highway against the danger which it presented, and that his failure to do so was negligence.

Whether, under all the circumstances of the case, negligence was the direct and proximate cause of the accident, was a question for the jury and not for the court to decide. The bus, according to the testimony, which must be accepted as true, formed a barrier across the road as complete and effective as a stone wall or a deep ditch, and it may well be assumed, in the absence of any warning of its presence, that, if a traveler in the lawful use of the highway ran into and was injured by such an obstruction, it was the direct and proximate cause of the injury. It is true that the appellants contend that the direct and proximate cause of the accident was MacDonald's negligence. But, as this is not MacDonald's case, the question goes somewhat beyond that. For, even if MacDonald was negligent as a matter of law, and we do not so decide, the driver of the bus was bound to know what is a matter of common knowledge, and that is that, over such roads as the McMullen Highway, automobiles constantly are driven at all hours of the day and night at high speeds in the belief that, if the highway is obstructed or in any way made unsafe for travel, reasonable warning of the danger will be given. He was bound to know, too, that, under the statutory law of the state (Code, Supp. 1929, art. 56, sec. 193), all persons operating automobiles over such highways at night were required to have the headlights so adjusted that there would be no glaring rays over forty-two inches from the surface of the road at a distance of seventy-five feet from the front of the machine, a regulation which necessarily limited the range of its lights. Under these circumstances, too, the driver of the bus was bound to anticipate that, as a probable consequence of his negligence, an automobile operating over the highway at that point might run into the bus, and that injuries to third persons might result from the collision. And when, with that knowledge, he failed to warn

approaching traffic of the danger, and as a consequence of such failure an automobile operated over the highway did collide with the bus, with resulting injury to a third person, it cannot be said that his negligence was not the proximate cause of the injury to such third person, even though the driver of the automobile was himself guilty of negligence in driving at a speed too great to enable him to stop within the range of his own lights. As to whether such conduct on the part of the driver of the automobile did in fact constitute negligence as a matter of law is a question upon which the decisions are in conflict. In *Haynes v. Doxie,* 52 Cal. App. 133, 198 P. 39, it was held that the driver of an automobile which on a dark, rainy, night collided with an unlighted truck standing in the middle of the road, and who was driving at not over thirty miles an hour, was not guilty of contributory negligence as a matter of law because he failed to see the obstruction in time to avoid the collision. But in *Spencer v. Taylor,* 219 Mich. 110, 188 N. W. 461, 462, it was held "negligence as a matter of law to drive an automobile along a public highway in the dark at such speed that it cannot be stopped within the distance that objects can be seen ahead of it." Decisions supporting both views will be found collected in 24 *A. L. R.* 510, 47 *A. L. R.* 706, and *Huddy on Automobiles* (8th Ed.), 396, and notes 39, 40 and 44.

It is not, however, necessary to decide that question in this case, for, even if MacDonald was guilty of such negligence as would have barred his right to recover, nevertheless, if his negligence concurred with that of the appellants to cause the injury of which the appellee complains, it was for the jury, upon the facts stated above, to say whether the negligence of the appellants or of MacDonald or both was the proximate cause of it. The mere fact that the original act of the appellants in obstructing the highway would not in itself have injured the appellee is not a defense to his action against them, if it appears that it was known, or should have been known, to appellants' driver that failure to warn approaching traffic of the obstruction might naturally and probably result in an accident which would or might injure

others, lawfully in the use of the highway. For, as stated in *United Rwys. Co. v. Perkins,* 152 Md. 111, 136 A. 50, 53 : " 'Whoever does an illegal act is answerable for all the consequences that ensue in the ordinary and natural course of events, though those consequences be immediately and directly brought about by the intervention of others, provided the intervening agents were set in motion by the primary wrongdoer, or provided their acts causing the damage were the necessary or legal and natural consequence of the original wrongful act.' *Addison on Torts,* adopted as a correct statement of the principle in *Balto. City Pass. Ry. Co. v. Kemp,* 61 Md. 74; *State v. Washington, B. & A. Elec. R. Co.,* 130 Md. 603, 612, 101 A. 546. And see *Mayor & Council of Hagerstown v. Foltz* (133 Md. 52, 104 A. 267) and *Wilson v. Yates* (137 Md. 54, 111 A. 161), *supra;* and various special studies on the subject: *Bohlen, Studies in the Law of Torts,* 1; *Smith,* 35 *Harvard Law Rev.* 103 ; *Terry,* 28 *Harvard Law Rev.* 10; *Beale,* 35 *Harvard Law Rev.* 633, and *Burke,* 15 *Cal. Law Rev.* 1."

While, because of the infinite variety of circumstances out of which the question may arise, there can be no comprehensive or final definition of the phrase, it may be said that, where there is a complete continuance and unbroken sequence between the act complained of and the act finally resulting in the injury, so that the one may be regarded by persons of ordinary judgment as the logical and probable cause of the other, the former may be regarded as the proximate cause of the injury. *Words and Phrases, Proximate Cause* (First, Second and Third Series) ; *Huddy on Automobiles,* secs. 353, 354; *Coughlin v. Blaul,* 120 Md. 35, 87 A. 766; *State v. Wash., B. & A. R. Co.,* 130 Md. 612, 101 A. 546, 549. Ordinarily the question is one for the jury, for, as Judge Pattison, speaking for this court, said in *Baltimore v. Terio,* 147 Md. 335, 128 A. 353, 355 : "The question of proximate cause of injury is in very many cases difficult of determination. It is not a question of science or legal knowledge, as is said in *Milwaukee & St. Paul Railway Co. v. Kellogg,* 94 U. S. 469, 24 L. Ed. 256, but one to

be decided upon common sense principles in the light of the surrounding facts and circumstances of the case under consideration. *Pennsylvania Steel Co. v. Wilkinson,* 107 Md. 582, 69 A. 412. And, as said by Judge Alvey in *Balto. & Pot. R. Co. v. Reaney,* 42 Md. 136, the 'courts do not indulge in refinements and subtleties, as to causation, that would defeat the claims of natural justice.' The true rule is that what is proximate cause of an injury is ordinarily a question for the jury. It is only when the facts are undisputed, and are susceptible of but one inference, that the question is one of law for the court, and whether it will or will not be a question for the jury will depend upon the facts of each case. 22 *R. C. L.,* p. 31, and cases cited in note thereto." And in *State v. Wash., B. & A. R. Co., supra,* it is stated that "no wrongdoer ought to be allowed to apportion or qualify his own wrong, and that, as a loss has actually happened whilst his own wrongful act was in force and operation, he ought not to be permitted to set up as a defense that there was a more immediate cause of the loss, if that cause was put into operation by his own wrongful act. To entitle such party to exemption, he must show, not only that the same loss might have happened, but that it must have happened, if the act complained of had not been done. *Davis v. Garrett,* 6 Bing. 716." See, also, *Pennsylvania Steel Co. v. Wilkinson,* 107 Md. 580, 69 A. 412; *Leland v. Empire Engineering Co.,* 135 Md. 218, 108 A. 570; *Hagerstown v. Foltz,* 133 Md. 56, 104 A. 267; *Balto. Car Wheel Co. v. Clark,* 131 Md. 532, 104 A. 357. Those long settled and established principles may be as fairly applied to the facts of this case as to the facts in *Pennsylvania Steel Co. v. Wilkinson, supra,* where it was held that the negligence of the defendant in allowing a rope to hang in a loop over the street was the proximate cause of an accident which was caused by a movement of the rope which frightened the plaintiff's horse, although the movement was itself caused by a stranger.

In this case, assuming that MacDonald's conduct in driving so fast that he could not stop within the range of his lights, or in failing to see the obstruction, was negligent, and that

the conduct of the appellant in allowing its bus to block all traffic on the highway without warning travelers on the highway of its presence was negligent, it cannot possibly be said as a matter of law whose negligence was the proximate cause of the accident. Certainly it could not have happened had not the bus blocked the highway, nor could it have happened if MacDonald had seen its position in time to have stopped his car before he was confronted with the necessity of deciding instantly whether he would crash head on into the bus or attempt to go through the space of from three to five feet between it and the post. Under such circumstances the questions of proximate cause and primary negligence were for the jury, and we find no error in the refusal of defendants' first and third prayers. *Huddy on Automobiles,* sec. 353.

The question of contributory negligence was also properly left to the jury, for the record discloses no facts sufficient to compel the conclusion that the appellee was guilty of negligence as a matter of law. The plaintiff below, the appellee here, had, it is true, in a well-meant and humane effort to prevent a serious accident and perhaps save human life, placed himself in a position of grave peril which he was not obliged to assume. But he had retreated from that position, and at the time of the accident was entirely off the traveled part of the road, standing in a ditch, in what he must necessarily have believed, in the haste and confusion of the moment, to be a safe place. Whatever might be said of his conduct under other circumstances, when considered in connection with the reason for his being where he was when he was struck, it cannot be characterized as negligence in law. For the law measures acts done under the spur and stress of sudden emergencies such as confronted him, when done for the purpose of averting serious or even fatal consequences to others, with more indulgence than where they are impelled by no such motive. To constitute negligence as a matter of law, the act relied upon must present some feature of reckless indifference to one's own safety, which leaves no room for ordinary minds to differ as to its quality. *Carter's Digest "Negligence,"* sec.

221, 255d. And as was said in *Maryland Steel Co. v. Marney,* 88 Md. 498, 42 A. 60, 66: "The law has so high a regard for human life that it will not impute negligence to an effort to preserve it, unless made under such circumstances as to constitute rashness, in the judgment of prudent persons." That statement of the law was cited and approved in *American Express Co. v. Terry,* 126 Md. 262, 94 A. 1026, and again in *State etc. v. Baltimore,* 141 Md. 347, 118 A. 753, where this court, quoting from *Beach on Contributory Negligence,* cited in *Maryland Steel Co. v. Marney, supra,* said: " 'When one risks his life, or places himself in a position of great danger, in an effort to save the life of another, or to protect another who is exposed to a sudden peril or in danger of great bodily harm, such exposure and risk for such purpose is not negligence.' "

Tested by those principles it cannot be said that Dawson's conduct in remaining as near the bus as he was when he was struck was so rash or so reckless as to amount to negligence as a matter of law. He knew at the time of the accident that the bus was dimly visible, if at all, to one traveling over the highway, he saw MacDonald's car coming towards it, "making about the limit," and believed that, if it were not stopped, an accident was inevitable. In that emergency he attempted to warn MacDonald of the danger by lighting a match, and in so doing remained in a position of danger longer than was consistent with his own safety. But before the accident he had retreated to what seemed to him at the time to be a safe place, he was entirely off the traveled roadway, and his failure, under the stress of the sudden emergency which confronted him, to anticipate with unerring prescience the sequence of events which followed, is insufficient to charge him with negligence as a matter of law.

Finding no error in the rulings presented by the appeal, it follows that the judgment appealed from must be affirmed.

*Judgment affirmed, with costs.*